STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

George A. FAUCHER, Defendant-Appellant.

Supreme Court

No. 97–2702–CR. *Oral argument March 2, 1999.——Decided July 8, 1999.*

(Also reported in 596 N.W.2d 770.)

703

For the plaintiff-respondent-petitioner the cause was argued by *Warren D. Weinstein*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Suzanne Hagopian*, assistant state public defender.

¶ 1. DONALD W. STEINMETZ, J. The State seeks review of a published decision of the court of appeals, *State v. Faucher*, 220 Wis. 2d 689, 584 N.W.2d 157 (Ct. App. 1998), which reversed a judgment of con-

viction and an order denying postconviction relief of the Circuit Court for Ozaukee County, the Honorable Tom R. Wolfgram. The circuit court denied defendant George A. Faucher's postconviction motion for a new trial. In his postconviction motion, the defendant asserted that the circuit court erred when it earlier had denied his motion to strike a juror for cause and for a mistrial after the challenged juror stated that he could set aside his opinion that the State's key witness, his neighbor of four years, was a "person of integrity" who "wouldn't lie."

¶ 2. We are presented with the following issue: did the circuit court err in refusing to strike a juror for cause when the juror testified at a special *voir dire* that for four years he had lived next door to the State's main witness, knew the witness to be a "person of integrity" who "wouldn't lie," and subsequently stated that he could set his beliefs aside to consider the case impartially? ·

¶ 3. The circuit court found that the juror could be impartial and refused to strike him. On examination of the record, we conclude that a reasonable judge could only conclude that a reasonable person in this juror's position could not be impartial.

¶ 4. In addition to reviewing the issue presented, we also take the opportunity this case affords us to clarify our jury bias jurisprudence. The case at bar is but one of six jury bias cases this term for which we have granted petition for review.[1] From these cases we have come to recognize that our past decisions in this

[1] In addition to the case at bar, during the 1998–1999 Supreme Court term, we reviewed the following jury bias cases: *State v. Delgado*, 223 Wis. 2d 270, 588 N.W.2d 1 (1999), *State v. Broomfield*, 223 Wis. 2d 465, 589 N.W.2d 225 (1999), *State v. Erickson*, 227 Wis. 2d 758, 596 N.W.2d 749 (1999), *State v.*

area of the law have to a degree lacked the clarity necessary to properly guide the bench and bar in the appropriate examination of prospective jurors for evidence of bias. We believe that the resulting confusion stems from our inconsistent, and at times imprecise, use of the terms "implied," "actual," and "inferred" to describe a juror's bias. Today, we no longer refer to juror bias in these terms; their usefulness has run full course.

¶ 5. In their places we adopt the terms "statutory bias," "subjective bias," and "objective bias." The value in using these terms is twofold: each is particularly descriptive of the reason a prospective juror may not serve and each term accurately describes the analysis a circuit court will make in discerning whether a juror is biased. Further, our review of seven leading jury bias cases reveals that while we have not expressly used the terms we adopt today, the decisions implicitly recognize that when jurors were removed for cause, their removal was grounded in evidence of one of these three forms of bias. Our adoption of these new terms does not, however, change our existing jurisprudence.

I

¶ 6. The facts are undisputed for the purposes of this appeal. George A. Faucher (Faucher), the defendant, was charged with second-degree sexual assault of a 70-year-old patient at a nursing home where the defendant was employed as a nursing assistant. The charges against Faucher were supported by the witness account of a second nursing home employee, Paulette Hayes (Hayes), who testified at Faucher's

*Kiernan*, 227 Wis. 2d 736, 596 N.W.2d 763 (1999), and *State v. Mendoza*, 227 Wis. 2d 838, 596 N.W.2d 736 (1999).

trial that she saw the defendant fondling the victim's breast. The defendant denied that he had ever fondled the resident, and further testified that he was not in the resident's room when the alleged assault occurred but, instead, was transporting other residents from the dining hall to their rooms.

¶ 7. The State presented six witnesses in addition to Hayes, although none of the others testified to seeing the defendant engage in inappropriate touching of the victim or any other resident. Hayes was the State's key witness, and alluding to her significance, in his closing argument the prosecutor succinctly stated that "the heart of this case is really whether or not Paulette Hayes can be believed when she said that she poked her head into Room 103. . . ." He explained to the jurors that "[t]his case boils down to credibility of witnesses, that's it; who are you going to believe." The case was at its essence a credibility contest between Hayes and Faucher.

¶ 8. The possibility of a partial jury was made evident at the close of the State's case when juror David Kaiser (Kaiser) notified the court that he recognized Hayes as an acquaintance. During the initial *voir dire*, juror Kaiser did not see Hayes, who was not then present. Nor did Kaiser recognize her name when read from a witness list; apparently, due to marriage, she had changed her last name. The parties do not question that Kaiser did not have an opportunity to know that Hayes was a witness until she testified.

¶ 9. Alerted to the problem, the circuit court conducted a special, individual *voir dire* of Kaiser. After establishing that juror Kaiser knew Hayes, the court asked Kaiser to describe, "in general, the nature of that acquaintanceship." Kaiser replied that "[s]he was our next-door neighbor, and I knew the family very

well—well, relatively, so I knew who she—I knew of her, and not only knew of her, and she was a girl of integrity, so." Kaiser also admitted to living next door to Hayes for the four years prior to the trial.

¶ 10. The *voir dire* continued:

The Court: Is she still your next-door neighbor?

Juror Kaiser: Off and on. Her parents live next-door. And so she's always over there visiting and stuff. We always go by and say hi and that kind of stuff.

The Court: You don't socialize with her personally?

Juror Kaiser: No, I do not.

The Court: With that relationship, that acquaintanceship, could you judge her testimony the same as you judge the testimony of any other witness, giving her testimony no more or less credit just because of that relationship?

Juror Kaiser: I know she's a person of integrity, and I know she wouldn't lie.

Mr. Schneck [defense counsel]: At this—

The Court: Well, okay. Do you have—you have—Could you put any feelings that you have aside and decide—weigh her testimony the same as you weigh the testimony of any other witness—

Juror Kaiser: Yes.

The Court: —called to testify at this trial, instructed to by the Court?

Juror Kaiser: Yes.

¶ 11. To questions by the prosecutor, juror Kaiser affirmatively responded that he could set aside his knowledge of other facts or details that he was aware of

and decide the case only on what he heard in the courtroom.

¶ 12. The defense counsel inquired further into juror Kaiser's ability to set aside his opinion regarding Hayes's credibility:

Mr. Schneck: Mr. Kaiser, you've indicated that you don't believe that [Hayes] would lie about anything; is that correct?

Juror Kaiser: That's correct.

Mr. Schneck: And that assessment was made by you based upon your knowledge of [Hayes] and your experiences with her being a next-door neighbor?

Juror Kaiser: Hmm-uhm.

Mr. Schneck: If the testimony in this case suggests that, in fact, she may have been mistaken in terms of what she saw, how are you going to be able to reconcile your past knowledge of her and come to an unbiased decision in terms of what is the truth?

Mr. Gerol: Judge, I just don't think it's a proper question. I think it's almost getting to a predetermination.

The Court: Mr. Kaiser, obviously, that was one part of the testimony—part of the evidence that we heard here in court, and there's other evidence. Can you decide this case taking the evidence as a whole, and only on that evidence that you've heard here during the trial and will hear during the trial—

Juror Kaiser: Hmm-uhm.

The Court: —and apply it to the law as given to you by the Court, and be fair and impartial to both sides?

Juror Kaiser: I can.

The Court: If instructed by the Court, can you put aside—and I do instruct you to put aside any feelings that you may have concerning—put aside any personal feelings that you may have relative to your relationship, and judge the credibility of all the witnesses based upon the criteria that I will give you. Can you do that?

Juror Kaiser: Yes. I just wanted to—

The Court: You won't give her testimony, if I instructed you, any more or less credit just because of that relationship; is that right?

Juror Kaiser: That's correct.

The Court: Thank you, Mr. Kaiser.

¶ 13. Following this *voir dire*, defense counsel moved to strike juror Kaiser from the jury because of the bias he expressed. Defense counsel argued that it would be unfair to allow Kaiser to remain on the jury when he had formed an opinion, based on matters outside the evidence, that Hayes would not lie. However, the circuit court had empanelled only 12 jurors. Because no alternates had been seated, defense counsel also moved for a mistrial, explaining that he did not want to proceed with a jury of 11.

¶ 14. The court refused to grant a mistrial because, the court noted, Kaiser had testified that he "could put aside any feelings that he may have and judge the credibility of all the witnesses based upon the criteria that the Court will give him." After the mistrial motion was denied, defense counsel consulted briefly with the defendant and informed the court that proceeding with 11 jurors "would be acceptable to him as a lesser solution to the request to declare a mistrial."

¶ 15. Before a decision on the request was made, the court called Kaiser back into the courtroom and

710

conducted a second, individual *voir dire* to determine if Kaiser had disclosed anything about his relationship with Hayes to the other jurors. Kaiser admitted that he had told all of the other jurors that one of the State's witnesses was his neighbor, but testified that he had told them nothing about the witness—neither which witness he knew, nor his feelings regarding that witness.

¶ 16. Immediately following the second, individual *voir dire*, defense counsel renewed its objection to Kaiser serving on the jury, arguing that in light of the strong opinion he held about Hayes's credibility, it would be impossible for him to follow the court's instructions to set those beliefs aside. The court refused to alter its denial of the mistrial motion, ruling as follows: "Well, he's already testified that he can do that, or he said that he can do that. I mean, you have to take him at his word on that. He was under oath, and he said he could put any feelings aside. So, he's already been instructed on that." Ultimately, the prosecutor agreed to proceed with 11 jurors, as did the defendant. The circuit court excused Kaiser from the jury and the trial proceeded with the remaining 11. The 11-person jury returned a guilty verdict.

¶ 17. The defendant filed a motion for postconviction relief, arguing that the circuit court erred in refusing to strike juror Kaiser for cause, thereby violating a number of the defendant's constitutional rights, including his right to an impartial jury. He argued further that his waiver of a 12-person jury was not voluntarily made given the circuit court's failure to strike Kaiser for cause. The circuit court denied the defendant's request for a new trial, concluding that it did not err in refusing to grant defendant a mistrial.

¶ 18. The court of appeals reversed the circuit court's judgment of conviction and order denying post-conviction relief, and it remanded for a new trial, resting its decision in large measure upon this court's decision in *State v. Gesch*, 167 Wis. 2d 660, 482 N.W.2d 99 (1992). We reasoned in *Gesch* that while a prospective juror related to a state witness by blood or marriage to the third degree may harbor no actual bias, the risk of unconscious bias was manifest because it is near impossible for such a juror to consciously estimate how the family relationship with a witness will affect his or her judgment. *Gesch*, 167 Wis. 2d at 667. Using *Gesch* as analytical framework for its decision here, the court of appeals reasoned that the bias Kaiser openly expressed would be as difficult to set aside as was the bias implied to prospective jurors who were closely related to witnesses. *Faucher*, 220 Wis. 2d at 697–700. The court concluded that Kaiser was biased as a matter of law, and held that "because the totality of [Kaiser's] responses revealed bias so manifest that his assurances of impartiality were insufficient to preclude prejudice, a mistrial should have been ordered." *Faucher*, 220 Wis. 2d at 691.

¶ 19. Two days after the court of appeals released its decision, this court mandated *State v. Ferron*, 219 Wis. 2d 481, 579 N.W.2d 654 (1998), where we set forth the "manifest bias" test a reviewing court is to use in determining whether the circuit court properly refused to strike a juror for cause. We held that bias was manifest, requiring reversal, whenever a review of the record 1) does not support a finding that the prospective juror is a reasonable person who is sincerely willing to put aside an opinion or prior knowledge, or 2) does not support a finding that a reasonable person in

the juror's position could set aside the opinion or prior knowledge. *Id.* at 661. In an errata to its decision, the court of appeals summarily concluded that should it have had the benefit of *Ferron* prior to its decision in *Faucher*, neither the outcome nor the reasoning of its decision would have changed. *Faucher*, 220 Wis. 2d at 703 n.6. Applying the second prong of *Ferron*, the court wrote without discussion that "the record would not support a finding that a reasonable person in the juror's position could actually set aside his opinion as to the witness's credibility." *Id.* The State appeals.[2]

## II

¶ 20. Our use of the terms "implied," "actual," and "inferred" as descriptions of juror bias has been inconsistent and imprecise and has led to a degree of confusion among the bench and bar. How many types of bias do we recognize in Wisconsin, and how is each type of bias to be uncovered? These questions, although never explicitly asked, are at times implicit in circuit court decisions and parties' briefs—usually through the absence of any discussion of inferred bias.

¶ 21. Since at least our decision in *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985), *overruled on other grounds by State v. Poelinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990), we have at times expressly stated that juror bias was either "actual" or "implied."

---

[2] The court of appeals also concluded that defendant Faucher did not voluntarily waive his right to a 12-person jury when he chose to continue with 11 jurors following the circuit court's refusal to strike juror Kaiser. It held that by offering to continue the case with 11 jurors, Faucher did not abandon his right to raise on appeal the issue with which we are presented. The State has not reasserted waiver, and we do not address it here.

*Id.* at 730; *State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990); *Gesch*, 167 Wis. 2d at 666. Accordingly, a circuit court's examination of a prospective juror[3] involved consideration of the presence of one of these two types of bias. However, with our recent decision in *State v. Delgado*, 223 Wis. 2d 270, 588 N.W.2d 1 (1999), we relied upon the language in *Wyss* that "bias may be inferred from surrounding facts and circumstances" to explicitly recognize for the first time that "inferred" bias was a type of bias, not merely the method by which bias was surmised. *See id.*, 223 Wis. 2d at 282 (citing *Wyss*, 124 Wis. 2d at 730). We then reversed the circuit court for failing to find that the challenged juror in *Delgado* had "inferred" bias. *Id.* at 286.

¶ 22. Further contributing to the confusion are those cases in which the term "inferred" is used as a verb to describe the process by which "actual" or "implied" bias is discovered. One example is found in *Wyss*, where we wrote that "bias may be inferred from surrounding facts and circumstances." *Wyss*, 124 Wis. 2d at 730. Another example is found in the court of appeals' explanation of our decision in *Gesch*: "the supreme court relied upon the family relationship to 'infer' that the juror had developed strongly held opinions about his brother's character and credibility. The court then held that bias was 'implied.'" *Faucher*, 220 Wis. 2d at 699. Of course, the word "inferred" is most often used as a verb, and not an adjective, and therefore it is not surprising that courts and others have

[3] Here, and throughout our discussion, our use of the term prospective juror should be read to include the term juror. While the search for juror bias during the initial *voir dire* considers a *prospective juror's* ability to be impartial, a *juror's* bias is the focus of the inquiry following the start of trial.

used the word "inferred" only to describe the method by which one draws a conclusion from the evidence presented that a prospective juror had actual bias or implied bias.

¶ 23. In light of the confusion, we are convinced that the use of the terms "implied," "actual," and "inferred" to describe juror bias has outlived its utility and that the bench and bar will be better served with terminology that accurately reflects both the reason why a juror cannot be impartial, and the analysis a circuit court should use to discern whether a prospective juror is or is not impartial.

¶ 24. As has been explained by this court on many occasions, a criminal defendant's right to receive a fair trial by a panel of impartial jurors is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, § 7 of the Wisconsin Constitution, as well as principles of due process. *Louis,* 156 Wis. 2d at 478; *Gesch,* 167 Wis. 2d at 666. To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial. *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). The requirement that a juror be indifferent is codified in Wis. Stat. § 805.08(1)(1995–96).[4] That statute requires the circuit court to examine on oath each person who is called as a juror to discover if he or she "has expressed or formed any opinion or is aware of any bias or prejudice in the case." Wis. Stat. § 805.08(1). The statute directs that "[I]f a juror is not indifferent in the case, the juror shall be excused." *Id.* We have stated that even the appearance of bias should be avoided. *Louis,* 156 Wis. 2d at 478.

---

[4] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

715

¶ 25. In light of these principles, the requirements of Wis. Stat. § 805.08(1), and our review of our leading jury bias cases, today we adopt the terms "statutory," "subjective," and "objective" as the proper terms to use in referring to juror bias. We caution that these three terms do not neatly correspond to the terms "implied," "actual," and "inferred" as we have used those terms in our prior cases;[5] for instance, statutory bias is not a term we merely *prefer* over the term implied bias—or actual or inferred bias for that matter—as we explain below, statutory bias has a meaning independent of any one of the former terms. The same is true of subjective and objective bias. However, for the purposes of providing the circuit courts and practitioners with guidance, we do acknowledge that subjective bias is most closely akin to what we had called actual bias, and that objective bias in some ways contemplates both our use of the terms implied and inferred bias. But because the case law does not always use the

[5] Of our jury bias cases, *Delgado* describes "implied bias" and "actual bias" in a way that most closely corresponds, respectively, to the terms "statutory bias" and "subjective bias" as we adopt those terms today. We explained in *Delgado* that the phrase "actual bias" as set forth in Wis. Stat. § 805.08 (1989–90) means that " 'the prospective juror "has expressed or formed any opinion, or is aware of any bias or prejudice in the case." ' " *Delgado*, 223 Wis. 2d at 282 n.6 (citing *Wyss*, 124 Wis. 2d at 730). "Implied bias" we explained as "the type of bias set forth in § 805.08 based upon 'specific grounds that will automatically disqualify prospective jurors without regard to whether that person is actually biased, i.e., if "the juror is related by blood or marriage to any party or to any attorney appearing in this case or has a financial interest in the case." ' " *Id.* However, as our discussion in Part II of this opinion makes clear, we have not always referred to "implied bias" and "actual bias" in this way.

former terms in a consistent manner, there is not an absolute, direct correlation between the former terms and the terms we adopt today.

## A

█

¶ 26. What we shall now call "statutory bias" is the most easily described form of juror bias. With Wis. Stat. § 805.08(1), the legislature deemed biased those who were related by "blood or marriage to any party or to any attorney appearing in [the] case" and those who "[have] any financial interest in the case." Wis. Stat. § 805.08(1). Therefore, a person meeting one of these descriptions is statutorily biased and may not serve on a jury regardless of his or her ability to be impartial. Although § 805.08(1) also speaks of those prospective jurors who have expressed or formed any opinion or are aware of any bias or prejudice in the case, these persons are not those to whom the term "statutorily biased" applies. These persons are more accurately described as those for whom evidence of "subjective bias" exists. *See Delgado*, 223 Wis. 2d at 282 n.6.

█

¶ 27. We intend the term "subjective bias" to describe bias that is revealed through the words and the demeanor of the prospective juror. While the term "subjective" is not meant to convey precisely the same sense of bias as did the term "actual," the two terms are closely related. As did actual bias, subjective bias refers to the bias that is revealed by the prospective juror on *voir dire*: it refers to the prospective juror's state of mind.

█

¶ 28. We have stated in another context that a subjective inquiry will often not be susceptible to direct

717

proof. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994). And so it is true of a circuit court's inquiry into the prospective juror's state of mind. While there may be the occasion when a prospective juror explicitly admits to a prejudice, or explicitly admits to an inability to set aside a prejudice, most frequently the prospective juror's subjective bias will only be revealed through his or her demeanor. Therefore, we caution that whether a prospective juror is subjectively biased turns on his or her responses on *voir dire* and a circuit court's assessment of the individual's honesty and credibility, among other relevant factors. And just as was true of a circuit court's finding on actual bias, we believe that the circuit court sits in a superior position to assess the demeanor and disposition of prospective jurors, and thus, whether they are subjectively biased. Given the circuit court's superior position to so assess the demeanor and disposition of prospective jurors, we remain convinced that "[i]n most cases a circuit court's discretion in determining the potential for [subjective] juror impartiality or bias will suffice to protect a defendant's right to an impartial jury." *Gesch*, 167 Wis. 2d at 666. On review, we will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous.

¶ 29. On the other hand, the focus of the inquiry into "objective bias" is not upon the individual prospective juror's state of mind, but rather upon whether the reasonable person in the individual prospective juror's position could be impartial. When assessing whether a juror is objectively biased, a circuit court must consider the facts and circumstances surrounding the *voir dire* and the facts involved in the case. However, the

emphasis of this assessment remains on the reasonable person in light of those facts and circumstances. We observe the following examples of the objective standard in our prior cases. For instance, when a prospective juror is challenged on *voir dire* because there was some evidence demonstrating that the prospective juror had formed an opinion or prior knowledge, we explained that whether the juror should be removed for cause turns on whether a reasonable person in the prospective juror's position could set aside the opinion or prior knowledge. *Ferron*, 219 Wis. 2d at 498. And when determining whether a defendant should receive a new trial because extraneous, prejudicial information reached one or more jurors prior to the verdict, we have phrased the objective inquiry as whether "there is a reasonable possibility that the information in [the juror's] possession would have a prejudicial effect upon a hypothetical average juror." *State v. Messelt*, 185 Wis. 2d 254, 282, 518 N.W.2d 232 (1994).

¶ 30. Our jury bias case law demonstrates that in the past we have reviewed the circuit court's determination of whether a prospective juror was objectively biased under varying standards of review. For instance, we viewed the objective question as one of law and reviewed the circuit court's determination *de novo* in *Broomfield*, 223 Wis. 2d at 480, but viewed the question as one of fact and reviewed for clear error in *Delgado*, 223 Wis. 2d at 281. Although we have inconsistently reviewed the question in the past, we are convinced that the circuit court's determination on the question of objective bias should be reviewed under a deferential standard.

¶ 31. Whether a juror is objectively biased is a mixed question of fact and law. As is true of appellate review of factual findings generally, a circuit court's findings regarding the facts and circumstances surrounding *voir dire* and the case will be upheld unless they are clearly erroneous. Whether those facts fulfill the legal standard of objective bias is a question of law. This court does not ordinarily defer to the circuit court's determination of a question of law. *Figliuzzi v. Carcajou Shooting Club of Lake Koshkonong*, 184 Wis. 2d 572, 590, 516 N.W.2d 410 (1994). However, a circuit court's conclusion on objective bias is intertwined with factual findings supporting that conclusion. Therefore, it is appropriate that this court give weight to the circuit court's conclusion on that question. *See Figliuzzi*, 184 Wis. 2d at 590 (although whether facts meet the legal determination of unreasonable interference is a question of law, this court gives weight to the circuit court's conclusion on reasonableness because the facts and the law are closely intertwined); *see also Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis. 2d 349, 358, 377 N.W.2d 593 (1985) ("An appellate court need not defer to the trial court's determination on a question of law, although it should be given weight where the legal and factual determinations are intertwined. . . .").

¶ 32. The circuit court is particularly well-positioned to make a determination of objective bias, and it has special competence in this area. It is intimately familiar with the voir dire proceeding, and is best situated to reflect upon the prospective juror's subjective state of mind which is relevant as well to the determination of objective bias. *See Delgado*, 223 Wis. 2d at 285 ("[A] juror's honesty is an important factor in determin-

ing inferred bias. . . ."). We therefore give weight to the court's conclusion that a prospective juror is or is not objectively biased. We will reverse its conclusion only if as a matter of law a reasonable judge could not have reached such a conclusion.

B

¶ 33. We have identified seven cases through which our jury bias jurisprudence has evolved, and as a primer for jury bias analysis using the terminology we adopt today, we consider where each of these cases would fall given this new terminology. In chronological order of our original review, we consider *Wyss*, 124 Wis. 2d 681, *Louis*, 156 Wis. 2d 470, *Gesch*, 167 Wis. 2d 660, *Messelt*, 185 Wis. 2d 254, *Ferron*, 219 Wis. 2d 481, *Delgado*, 223 Wis. 2d 270, and *Broomfield*, 223 Wis. 2d 465. As further guidance, we have grouped our discussion of the cases according to the issues that were presented for our review: strike for cause, lack of juror candor, and extraneous information.

*Strike for Cause*

¶ 34. *Louis, Gesch*, and *Ferron* each involved review of a circuit court's order denying a defendant's motion to strike one or more jurors for cause. The three cases are examples of the most frequent challenges to a prospective juror: the challenge that an entire class is objectively biased, whereby the individual is challenged by virtue of his or her "membership" in the class. In *Louis* this challenge was directed generally at all law enforcement officers and in *Gesch* at those who were siblings of witnesses. The other frequent challenge is that which challenges the particular prospective juror where *voir dire* reveals some evidence

721

that the individual has a prior opinion or knowledge as those terms are used in Wis. Stat. § 805.08(1).

¶ 35. In *Louis*, 156 Wis. 2d 470, we held that two members of the Milwaukee Police Department were not ineligible *per se* to serve as jurors and that the circuit court did not err in finding that the two officers were not actually biased. *Id.* at 478–79. In so concluding, and with a view to the terminology we adopt today, we considered the presence of "statutory," "subjective," and "objective" bias and found insufficient evidence of all three.

¶ 36. We observed first that law enforcement officials were not among those groups the legislature expressly excluded from jury service, *id.* at 479–80, a conclusion, under the terminology we adopt today, that law enforcement officers are not statutorily biased. Next, we rejected the defendant's argument that "law enforcement officials would be biased against a defendant as a result of the nature of their occupation and their possible professional associations, no matter how attenuated, with some of the trial's participants." *Id.* at 480. We also wrote that "[a] prospective juror's knowledge of or acquaintance with a participant in the trial, without more, is insufficient grounds for disqualification." *Id.* at 484 (citing *State v. Zurfluh*, 134 Wis. 2d 436, 438, 397 N.W.2d 154 (Ct. App. 1986)). Using the terminology that we adopt today, we held that the challenged jurors were not objectively biased by mere virtue that they were employed as law enforcement officers and worked in the same department with the state's witness. Today we might write that a reasonable person in the position of a law enforcement officer could remain impartial despite working in the same department as a state witness.

¶ 37. We also considered the presence of actual bias and found none. *Id.* at 483–84. We held that the officers' comments that they could be impartial was supported by the record, writing that "[w]hile such expressions are not conclusive, evaluating the subjective sincerity of those expressions is a matter of the circuit court's discretion." *Id.* at 484 (citing *State v. Sarinske,* 91 Wis. 2d 14, 33, 280 N.W.2d 725 (1979)). As one might observe from this conclusion, we believed that there was no evidence of subjective bias—that the prospective jurors' states of mind revealed that they were impartial.

¶ 38. The defendant in *Gesch* challenged as biased a prospective juror because he was a state's witness's brother. *See Gesch,* 167 Wis. 2d 660. Although we reversed the circuit court's order denying the defendant's motion to strike the juror for cause, we found no evidence of subjective bias. *See id.* at 667 (the circuit court made an "admirable and thorough search for actual bias and found no actual bias" and we had no doubt that the juror "honestly believed that he could remain impartial.").

¶ 39. However, considering the relationship objectively, we concluded that the juror should have been removed for cause, reasoning that "where a prospective juror is related to a state witness by blood or marriage to the third degree, special problems exist that render a circuit court's search for actual bias an inadequate protection of a defendant's right to an impartial jury. One such problem is the potential for unconscious bias." *Id.* at 667. We deemed it highly probable that a family member would not be able to remain impartial despite the family member's honest belief that he or she could do so, and held that "the mere probability of bias is so high that in order to

assure a defendant the fundamental fairness to which the defendant is entitled, we must imply bias and exclude the juror as a matter of law." *Id.* at 668.

¶ 40. Our holding in *Gesch* is unique. In most circumstances, as we discussed when outlining the meaning of objective bias, the conclusion that an individual is objectively biased requires some view of the facts and circumstances surrounding the *voir dire* and the case, as well as the prospective juror's answers. We therefore urge a circuit court to engage in a thorough *voir dire* when a party challenges a prospective juror through the class to which the prospective juror belongs. However, *Gesch* remains an example that some relationships are so fraught with the possibility of bias that we must find objective bias regardless of the surrounding facts and circumstances and the particular juror's assurances of impartiality.

¶ 41. Finally, *Ferron* is our most recent case reviewing a circuit court's decision on a defendant's motion to strike for cause and it most clearly foreshadows the terminology we adopt today. In *Ferron*, we articulated a standard of review which we would use to determine whether a challenged juror should have been removed for cause, explaining that a prospective juror should be removed whenever a review of the record: (1) does not support a finding that the prospective juror is a reasonable person who is sincerely willing to put aside an opinion or prior knowledge; or (2) does not support a finding that a reasonable person in the juror's position could set aside the opinion or prior knowledge. *Ferron*, 219 Wis. 2d at 497. We then explained that the first prong probed for evidence of bias from a subjective point of view, and the second from an objective point of view:

724

> Adopting this approach serves two purposes. With a focus on prospective jurors' subjective willingness to set aside their biases, the first prong of this approach accounts for the circuit court's superior position to assess the demeanor and disposition of prospective jurors. The second prong allows the appellate courts to determine whether under the particular circumstances surrounding the voir dire examination, no reasonable juror could put aside the bias or opinion which is revealed by the record.

*Id.* (citation omitted).

¶ 42. Because we found evidence under the first, subjective prong of *Ferron* that the challenged juror in *Ferron* was biased, we did not reach the second, objective prong. The challenged juror in *Ferron* explained during *voir dire* that should he be impaneled, he could not fail to consider the defendant's refusal to testify in his own defense. After a lengthy *voir dire* in which the circuit court explained the law on a number of occasions, the juror stated that he could "probably" decide the case without considering the fact that the defendant did not take the stand. Based in part upon this response, the circuit court was satisfied that the juror could be impartial.

¶ 43. We reversed the circuit court on grounds that the juror's response that he "probably" could set aside his bias was evidence of a "lack of sincere willingness to set aside his bias [that] illustrate[d] that he was not 'indifferent in the case' as required by Wis. Stat. § 805.08(1)." *Id.* at 503. In accord with the terminology we adopt today, this juror was subjectively biased—that is, his state of mind as revealed through his answers to the questions posed by the circuit court evinced his bias against the defendant.

*Lack of Juror Candor Cases*

¶ 44. A defendant's motion for a new trial made on the grounds that a juror lacked candor during *voir dire* presents a second scenario within which questions of juror bias are raised. To successfully gain a new trial on this basis, a defendant must satisfy the circuit court that (1) a juror incorrectly or incompletely responded to a material question on *voir dire* and if so that (2) it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the moving party. *Wyss*, 124 Wis. 2d at 726. Only the second prong directly involves considerations of bias. *See id.* at 730.

¶ 45. In *Wyss*, we upheld the circuit court's finding that the challenged juror was not biased. We quite clearly agreed with the circuit court that the evidence from *voir dire* did not support a finding of actual bias, or in the terminology we adopt today, that the juror was subjectively biased. *Id.* at 732. However, our discussion in *Wyss* leaves unclear whether either the circuit court or this court on review considered whether the juror's incorrect answers revealed objective bias. We did state that there were no facts and circumstances from which bias may be inferred, but the sense in which we made this statement is unclear.

¶ 46. In *Delgado*, where we reversed the circuit court's determination that a juror was not biased, this court much more explicitly discussed both subjective and objective bias. We concluded that it was more probable than not, that under the facts and circumstances surrounding the particular case, the challenged juror was biased against the moving party—a conclusion under the terminology we adopt today that the juror was objectively biased. *Id.* at 286.

¶ 47. In that case, we first noted that the circuit court found no evidence of actual bias, the equivalent of a finding that the juror was not subjectively biased, writing that "[i]n this case the circuit court found that Juror C. was honest, acted in good faith and did not purposely give an incorrect or incomplete answer." *Id.* at 282.

¶ 48. However, we reversed the circuit court because it had failed to find "inferred" bias—under the terminology adopted today, the circuit court failed to engage in a consideration of whether under the facts and circumstances of the case the juror was objectively biased. In determining whether a person is biased, a circuit court is supposed to consider the following factors:

> (1) did the question asked sufficiently inquire into the subject matter to be disclosed by the juror;
>
> (2) were the responses of other jurors to the same question sufficient to put a reasonable person on notice that an answer was required;
>
> (3) did the juror become aware of his or her false or misleading answers at anytime during the trial and fail to notify the trial court?

*Id.* at 283 (citing *Wyss*, 124 Wis. 2d at 731). We held that the circuit court failed to consider these factors, and had it done so, would have had to conclude that the juror was biased, for the answers to each of the three questions was affirmative. The answers to these questions revealed that the juror was objectively biased.

¶ 49. Finally, we also considered jurors' lack of candor in *Messelt*. In reviewing the circuit court's order denying the defendant's motion for a new trial, we wrote that "[the defendant's] argument [was] that bias must be implied from the fact that prior to trial, [the

jurors] possessed certain information about Messelt's prior criminal activity." *Id.* at 270. While we used the term "implied," the presence of such bias having always been a question of law, we reviewed only evidence of the jurors' subjective bias, the presence of which was factual in nature. We upheld the circuit court's finding that the jurors could be impartial, noting that the circuit court believed that the two jurors could be impartial based upon its assessment of the jurors' credibility and the nature of the knowledge they had. Our discussion of bias in *Messelt*, with respect to the two jurors who had knowledge of the defendant's criminal record, reviewed only the question of whether the jurors were subjectively biased. Neither the circuit court nor this court explicitly considered whether either juror was objectively biased.

### Extraneous Information

¶ 50. Juror impartiality may also be undermined when extraneous information reaches one or more juror's prior to a jury's verdict. *See generally, Messelt,* 185 Wis. 2d 254, and *Broomfield,* 223 Wis. 2d 465. In *Messelt,* we explained that whether extraneous information that reaches a juror constitutes prejudicial error requiring reversal of a verdict was a question of law.[6] *Messelt,* 185 Wis. 2d at 281–82. As such, where a

---

[6] To impeach a verdict, a defendant must first demonstrate that a juror's testimony is competent under sec. 906.06(2). Upon meeting that requirement, a defendant must demonstrate to the circuit court by clear, satisfactory and convincing evidence that the juror made or heard the statements or engaged in the conduct alleged by the defendant. Only if that burden is met will the circuit court make the legal determination of whether the extraneous information constitutes prejudicial error requiring

circuit court must consider whether the extraneous evidence was prejudicial, its prejudicial effect is considered only from an objective bias standard. *See id.* at 282 (citing *State v. Poh*, 116 Wis. 2d 510, 523–25, 343 N.W.2d 108 (1984)(the "analysis will focus on whether there is a reasonable possibility that the information in [the juror's] possession would have a prejudicial effect upon a hypothetical average juror."). The appropriate analysis under the test for extraneous, prejudicial information does not include considerations of subjective bias. While the test for extraneous, prejudicial information was explained in *Messelt*, the defendant's failure to sufficiently satisfy the circuit court that any extraneous information reached a juror ended the inquiry into prejudicial error prior to the analysis for objective bias.[7]

¶ 51. In *Broomfield*, our most recent jury bias decision, we did reach the bias inquiry. The defendant in *Broomfield* established that the challenged juror's testimony was competent for purposes of impeaching the verdict in his case, and that clear, satisfactory and convincing evidence demonstrated that the juror had received extraneous information which was potentially prejudicial: namely overhearing two people talking about a prior hung jury involving the defendant, and other bad acts allegedly committed by the defendant. We then considered whether either piece of extraneous information that the juror had overheard about the

reversal of the verdict. *See State v. Messelt*, 185 Wis. 2d 254, 518 N.W.2d 232 (1994).

[7] Because the defendant failed to prove that any of the alleged extraneous information reached any juror who participated in deliberations, the defendant's motion for a new trial was denied without the circuit court considering the effect the extraneous information would have on the hypothetical juror.

defendant was prejudicial and concluded that the information in the juror's possession did not constitute prejudicial error because the information would not have a prejudicial effect upon a hypothetical average juror. With the terminology adopted today, the information in the juror's possession was not sufficient to establish that the juror was objectively biased.

## III

¶ 52. We now address the issue presented, which involves a defendant's motion to strike a juror for cause. The transcript from the special *voir dire* clearly reveals that the circuit court was presented with evidence that juror Kaiser had formed an opinion regarding Hayes's credibility. On three occasions during the special *voir dire*, juror Kaiser expressed his view that he considered Hayes's credibility unimpeachable. First, he stated that he knew the witness, a former next door neighbor of four years, to be a "girl of integrity." Second, when asked by the court whether he could ignore his relationship as neighbor to Hayes, juror Kaiser responded "I know she's a person of integrity, and I know that she wouldn't lie." Third, when asked by the defense counsel if he had indicated that he believed that Hayes would not lie about anything, juror Kaiser responded affirmatively. Together, these three statements are evidence that juror Kaiser had an opinion and that he was not impartial. The circuit court then asked juror Kaiser if he could set aside his opinion and be impartial. Kaiser testified that he could and the circuit court was convinced that he would remain impartial.

¶ 53. This court will uphold the circuit court's factual findings that a prospective juror is not subjectively biased unless the finding is clearly erroneous.

¶ 54. Apprised of juror Kaiser's opinion, the circuit court appropriately engaged him to determine whether he could set aside his opinion of Hayes and serve impartially. Kaiser unambiguously stated that he could set aside his opinion that Hayes would not lie and decide the case based only on the evidence.

¶ 55. The circuit court believed that Kaiser was honest when he testified that he could set aside his opinion. On our review of the record we conclude that the circuit court's finding that Kaiser was a reasonable person who was sincerely willing to put aside his opinion is not clearly erroneous. Unlike the result in *Ferron*, where we found that a juror was not sincerely willing to set aside an obvious bias where his last word on the subject was that he "probably" could do so, *see id.* at 501, here, Kaiser was unambiguous in his belief that he could do so and stated unequivocally that he would follow the law.[8] The record supports the circuit court's finding that Kaiser was a reasonable person and that he was sincere in his willingness to set his opinion aside. The circuit court's determination that juror Kaiser was not subjectively biased is not clearly erroneous.[9]

¶ 56. We give weight to the circuit court's conclusion that a prospective juror is or is not objectively biased. We will reverse its conclusion only if as a mat-

---

[8] We remain committed to our view that a prospective juror need not unambiguously state his or her ability to set aside a bias. *State v. Ferron*, 219 Wis. 2d 481, 579 N.W.2d 654 (1998). However, where, as here, a prospective juror's unambiguous statement that he will follow the law and act impartially does serve as evidence weighing against a finding that the juror is subjectively biased.

[9] The circuit court found that Kaiser was not actually biased.

ter of law a reasonable judge could not have reached such a conclusion.

¶ 57. The circuit court did not consider whether juror Kaiser was objectively biased. Upon concluding that Kaiser was sincere in his willingness to set aside his opinion, the circuit court ended its inquiry. The circuit court's decision not to dismiss Kaiser was based solely on Kaiser's statement that he could set aside his opinion, and the court's erroneous belief that it had to "believe his response." On examination of the record, we conclude as a matter of law that a reasonable judge can reach only one conclusion; that is that the juror was objectively biased.

¶ 58. We observe first that the record discloses what must be regarded as Kaiser's strongly held opinion regarding Hayes's credibility. His responses on *voir dire* are telling. First, when asked to describe the nature of his relationship with Hayes, he begins by explaining that Hayes was his next door neighbor, but tellingly ends his response not with a description of the relationship as asked to, but rather by expressing his opinion that Hayes was "a girl of integrity."

¶ 59. Second, the circuit court expressly asked Kaiser if he "could judge her testimony the same as [he would] judge the testimony of any other witness, giving her testimony no more or less credit just because of that relationship?" Instead of responding negatively or affirmatively as was appropriate given the nature of the question, juror Kaiser apparently felt it better to reiterate his opinion of Hayes, responding: "I know she's a person of integrity, and I know she wouldn't lie." We believe this answer, which was not responsive to the court's question, belies the strength with which Kaiser held his favorable opinion of Hayes's credibility.

¶ 60. Finally, after he subsequently assured the court that he could set his opinion aside and weigh Hayes's testimony as he weighed the testimony of any other witness, Kaiser agreed with the defense counsel restatement of his opinion that "based upon his knowledge of Ms. Hayes as a next-door neighbor, he believed that she would not lie about anything."

¶ 61. It is the strength of the opinion Kaiser held, coupled with the fact that Hayes was the crucial witness in the State's case, that leads us to the conclusion that a reasonable person in his position could not set the opinion aside despite the best of intentions to do so. We agree with the court of appeals that

> the trial was a credibility contest between Hayes and Faucher—the sole witness and the alleged perpetrator of the crime. . . .[G]iven the strength of the juror's opinion about Hayes' credibility it is utterly impossible for any court to determine with confidence that his judgment or action would not be swayed or controlled by his preconceived convictions.

*Faucher*, 220 Wis. 2d at 698. Despite Kaiser's best and most sincere efforts to do so, we conclude that Kaiser could not truly set aside his strongly held belief that Hayes would not lie when he was called upon to answer the only question he was likely to face as a juror in this case: was Hayes, or the defendant, telling the truth.

¶ 62. The State argues that a reasonable person in Kaiser's position could have set aside his opinion—basing this conclusion on its belief that Kaiser's opinion was not strongly held. It believes that the opinion wasn't strongly held because the four-year relationship Hayes and Kaiser shared was not particularly close as Kaiser's relationship was primarily with

Hayes's family and only secondarily with Hayes herself. As evidence that the Kaiser-Hayes relationship was superficial, the State suggests, without providing support, that the trial court "implicitly inferred that the relationship was primarily between Mr. Kaiser and Ms. Hayes' parents." We do not find any evidence from which the circuit court could draw this inference from the *voir dire*, and we disagree with the State that that is the appropriate inference to draw from the *voir dire*.

¶ 63. The State also characterizes the relationship between Hayes and Kaiser as one similar to the superficial relationship shared by co-workers in *State v. King*, 120 Wis. 2d 285, 354 N.W.2d 742 (Ct. App. 1984). In *King*, *voir dire* revealed that a juror knew the State witness as co-worker and the brother-in-law of another co-worker, and that the extent of the relationship was their exchange of greetings in the workplace. *Id.* at 295. The juror testified that this relationship with the witness would not affect his ability to remain impartial. *Id.* The circuit court refused to strike the juror for cause, *id.*, and the court of appeals affirmed.

¶ 64. With its reliance on *King*, the State apparently suggests that the relationship between Hayes and Kaiser and the relationship described in *King* are so closely analogous that just as evidence that a juror and witness are co-workers is insufficient evidence of objective bias, so too should evidence that a juror and witness are neighbors be insufficient evidence of objective bias. We agree with the State that evidence of only a superficial relationship fails to satisfy objective bias analysis. However, the State's reliance on *King* is misplaced for two reasons.

¶ 65. First, *King* and this case are clearly distinguishable for the juror in *King* expressed no opinion

734

about the witness, whereas here Kaiser did express an opinion about Hayes.

¶ 66. Second, and of much greater import, our holding that a reasonable person in juror Kaiser's position could not have set aside his opinion is not based solely upon the relationship Kaiser had with Hayes. We would reverse a trial judge as a matter of law if he or she held that all jurors who live next door to witnesses are objectively biased. Instead, our conclusion that Kaiser is objectively biased is grounded in Kaiser's strongly held, initial assurances that Hayes was credible. While his relationship to Hayes as a neighbor undoubtedly provides the crucible in which Kaiser's opinion developed, it is not that relationship, but rather his strongly held beliefs, that leads us to the conclusion that a reasonable person in Kaiser's position could not set aside his opinion about the witness.

*By the Court.*—The decision of the court of appeals is affirmed.