# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP763-CR**

Cir. Ct. No. 2016CF235

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

AMY M. VAN WAGNER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Waukesha County: RALPH M. RAMIREZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Amy M. Van Wagner appeals from her judgment of conviction for first-degree intentional homicide, pursuant to WIS. STAT. § 940.01(a) (2021-22)[1], and hiding a corpse, pursuant to WIS. STAT. § 940.11(2), and from the trial court's order denying her postconviction motion for a new trial based on her allegation that a juror at her trial was biased.  Because Van Wagner has not met her burden to show that the juror in question was objectively biased, we affirm.

¶2     The State charged Van Wagner with first-degree intentional homicide and hiding a corpse in connection with the death of her husband, Stanley Van Wagner.   According to evidence presented in Van Wagner's ten-day trial, Stanley's body was found with multiple gunshot wounds and covered by a tarp in the basement of the Van Wagners' home.  The jury found Van Wagner guilty as charged.   She was later sentenced to life in prison without the possibility of extended supervision.

¶3     The facts giving rise to the instant appeal occurred on the seventh day of Van Wagner's jury trial.   During the lunch break on that day, a woman who had been in the courtroom throughout the trial approached one of the jurors.  The juror, identified by the parties as "Juror 523," had been wearing a tag that clearly identified her as a juror.  Although Juror 523 could not remember exactly what the woman said, she recalled that the woman "spoke … about the wind and [the juror's] hair and [the woman's] hair."  The woman also indicated to Juror 523 that "she knew the Van Wagners."  The State asked Juror 523 whether anything about

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that interaction would lead her to believe that she "couldn't be fair and impartial and still decid[e] this case[,]" to which Juror 523 answered, "Yes or no? Is that a yes or no? No. Nothing."

¶4 Outside the presence of the jury, upon questioning by the trial court, Van Wagner indicated that the woman was "[a] very good family friend." Communicating some anger over the situation, the trial court ejected the woman from the courtroom.

¶5 When the jurors returned to the courtroom, the trial court acknowledged that Juror 523 had been "frightened" in having to be addressed privately by the judge in open court, made clear that the woman who spoke to Juror 523 was one of the people supporting Mrs. Van Wagner, and emphasized that the woman's behavior should not be deemed a reflection on the prosecution or defense or on Van Wagner herself. The trial proceeded. At the end of the day, the court explained that Juror 523 had requested, and was provided with, an escort to her car:

> Just so everybody is cognizant, one of our bailiffs is going to walk [Juror 523] to her car. She has a little concern about family members from what occurred earlier, and I understand her concern. It doesn't cause me to think she can't be fair and impartial but obviously she is a citizen who doesn't have any usual knowledge or connection with court proceedings. So, I have been advised that the request was made and I'm going to honor that request.

After some discussion unrelated to this issue, the court stated:

> I have been advised that [Juror 523] is fairly fearful of the circumstances believing that she has a concern for her safety. And as I said, I will note one of my bailiffs walked her out to the car. I think I will make inquiry of her tomorrow to see if anything is affecting her ability to be a fair and impartial juror.

3

¶6      The next morning, at the behest of both parties, the trial court spoke with Juror 523 again and reiterated that the woman's contact with her was not the fault of Van Wagner or her counsel "in any way, shape, or form." In response to the court's questions about whether her fear or concern might be held against Van Wagner or might "affect [her] ability to be a fair and impartial juror," Juror 523 said, "I would say no. Yesterday was just bizarre to me and I had some anxiety from that whole ordeal but I was fine. I'm fine now." She continued, "I don't feel that anyone put anyone up to anything or there was any sort of anything to that." In response to a question from defense counsel about whether her "thoughts about who Mrs. Van Wagner is and what kind of person she is" were colored by the incident, Juror 523 responded that they were not. She also indicated that the other jurors had not expressed negative thoughts about Van Wagner or the people supporting her, although they were present to see Juror 523 being escorted to her car and she thought they understood why she might feel anxious.

¶7      Several years after her conviction, Van Wagner filed a motion seeking a new trial on the grounds that Juror 523 was objectively biased and that her counsel was ineffective for failing to object to this juror's presence on the jury. After a hearing, the trial court made an oral ruling denying the motion. The court explained that it had reviewed the transcripts from trial and considered the positions of the parties. After reviewing "the facts and circumstances in their totality," including both "what happened" and "what [Juror 523] said[,]" the court concluded that there was not "a sufficient record … to demonstrate that that juror was objectively biased against Ms. Van Wagner." The court stated that "the question is not just about [Juror 523]," but "about a person who is contacted by a member in the gallery, who expressed some concern, who was told that the person

4

from the gallery had no direct relationship to the defense team or Ms. Van Wagner and certainly was no reflection on Ms. Van Wagner [or] the defense [team]." Given its determination that Juror 523 was not biased, the court suggested there was no need for a hearing on the ineffective assistance claim, and Van Wagner's counsel agreed because "a prejudice argument gets a little harder."

¶8 Van Wagner appeals, asserting that Juror 523 was objectively biased and that the trial court erred by focusing only on whether the juror was subjectively biased. The State argues that Van Wagner forfeited her objective bias claim during trial, but that even if she did not, she is not entitled to a new trial because she has not shown that the juror in question was biased.

¶9 "The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury." *State v. Oswald*, 2000 WI App 2, ¶16, 232 Wis. 2d 62, 606 N.W.2d 207 (1999) (citing U.S. CONST. amend. VI; WIS. CONST. art. I, § 7); *see also* WIS. STAT. § 805.08(1) ("If a juror is not indifferent in the case, the juror shall be excused."). Our supreme court has identified three categories of juror bias that prevent a juror from serving. *State v. Faucher*, 227 Wis. 2d 700, 706, 596 N.W.2d 770 (1999). The first is "statutory bias," which is defined in § 805.08(1) and includes, for example, jurors related by blood or marriage to a party and those having a financial interest in the case. *Faucher*, 227 Wis. 2d at 717. The second category is "subjective bias," which is an inability or unwillingness to be impartial revealed through a juror's words and demeanor. *Id.* at 717-18; *Oswald*, 232 Wis. 2d 62, ¶19. Finally, "objective bias"—the type of bias alleged here—is based "not upon the individual … juror's state of mind, but rather upon whether the reasonable person in the individual … juror's position could be impartial." *Faucher*, 227 Wis. 2d at 718; *see also State v. Funk*, 2011 WI 62, ¶49, 335 Wis. 2d 369, 799 N.W.2d 421.

¶10 "Whether a juror is objectively biased is a mixed question of fact and law." *Faucher*, 227 Wis. 2d at 720. As usual, we uphold a trial court's factual findings surrounding the juror unless they are clearly erroneous. *Id.* However, although we do not normally defer to a lower court's legal determination, the trial court's "determination on the question of objective bias should be reviewed under a deferential standard." *Id.* at 719; *see also State v. Lepsch*, 2017 WI 27, ¶24, 374 Wis. 2d 98, 892 N.W.2d 682 (quoting *Funk*, 335 Wis. 2d 369, ¶30) (stating that our supreme court will "give weight to the [trial] court's legal conclusion" with regard to objective bias). This is because factual and legal determinations are "intertwined" in an objective bias analysis and the trial court is "particularly well-positioned" to conduct this analysis given its familiarity with the jurors and ability to "reflect upon the … juror's subjective state of mind which is relevant … to the determination of objective bias." *Faucher*, 227 Wis. 2d at 720. We also note that jurors are presumed to be impartial, and Van Wagner "bears the burden of rebutting this presumption and proving bias." *See Lepsch*, 374 Wis. 2d 98, ¶22 (citation omitted). We reverse the trial court's determination regarding objective bias "only if as a matter of law a reasonable judge could not have reached [its] conclusion." *Funk*, 335 Wis. 2d 369, ¶30 (quoting *Faucher*, 227 Wis. 2d at 720-21).

¶11 Van Wagner cannot meet her burden to show that the trial court's determination was unreasonable as a matter of law. First, her complaint that the trial court "only focused on whether Juror 523 was subjectively biased" and not objectively biased is belied by the Record; the court explicitly considered not only Juror 523's possible subjective bias but that of a hypothetical reasonable "person who is contacted by a member in the gallery, who expressed some concern[.]" *See Faucher*, 227 Wis. 2d at 718, 720 (explaining that objective bias turns on

"whether the reasonable person in the individual … juror's position could be impartial" and that the "juror's subjective state of mind … is relevant … to the determination of objective bias"). And contrary to Van Wagner's argument, the court *did* consider the juror's concerns—her "subjective state of mind"—in the totality of the circumstances and whether a reasonable person with such concerns would be able to be impartial. *See **id.** at 720.

¶12 Next, Van Wagner mischaracterizes the evidence by asserting that "[w]hen asked by the prosecutor … if she could be impartial, her answer suggested that if forced to answer yes or no, she would answer no." In fact, the question to which Juror 523 was responding was whether there was "anything about that [interaction with the woman over the lunch break] that in [her] mind would lead [her] to believe [she] couldn't be fair and impartial and still decid[e] this case?" After clarifying whether she was being asked a "yes or no" question, Juror 523 responded, "No. Nothing." In other words, immediately after the incident, Juror 523 responded that there was nothing that would lead her to believe she could not be impartial, and there are no statements from Juror 523 in the Record to the contrary, despite her acknowledgement that the incident with the woman was "bizarre" and caused her "some anxiety" on the day that it occurred. Again, the trial court considered this testimony in determining whether a reasonable person with the level of concern that Juror 523 had could be impartial, and with the benefit of also being familiar with Juror 523 and being able to observe her demeanor, *see **Faucher***, 227 Wis. 2d at 720, it made a conclusion that we cannot overturn as unreasonable.

¶13 Finally, and perhaps most importantly, the nature of the interaction between the woman in the gallery and Juror 523 was not such that it would compel a conclusion of objective bias as a matter of law. The juror's complete

recollection about her conversation with the woman who approached her was that the woman said something about the windy weather and hair and that she knew the Van Wagners. There was no evidence that the woman was trying to influence or intimidate Juror 523. While Juror 523 was temporarily "frazzled" by the situation (as both she and the trial court acknowledged), we conclude that a reasonable person would be able to disregard the relatively innocuous interaction[2] and be an impartial juror, especially after the trial court addressed Juror 523's concerns, removed the woman from the courtroom for the remainder of the trial, and reminded the jury multiple times that the interaction should have no bearing on how the jurors thought about any of the parties or the case.

¶14 For the foregoing reasons, regardless of whether Van Wagner forfeited her objective bias claim, we conclude that it lacks merit.

¶15 Accordingly, we affirm the judgment of conviction and the order denying the postconviction motion for a new trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[2] Indeed, as Van Wagner's counsel stated to Juror 523 on the Record on the day after the incident, "[i]f my client were Al Capone, the connection between somebody contacting you and him would be something obvious and, obviously, that isn't what we have here."