STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

David D. FUNK, Defendant-Respondent.

Supreme Court

*No. 2008AP2765. Oral argument February 1, 2011.*
*—Decided July 8, 2011.*

2011 WI 62

(Also reported in 799 N.W.2d 421.)

For the plaintiff-appellant-petitioner the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-respondent there were briefs and oral argument by *Michele Anne Tjader, Tjader Law, Inc.,* Madison.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review an order of the court of appeals[1] affirming the

---

[1] *State v. Funk,* No. 2008AP2765–CR, unpublished order (Wis. Ct. App. Apr. 28, 2010).

circuit court's[2] order vacating a jury verdict finding David Funk (Funk) guilty of two counts of sexual assault of a child and granting him a new trial. The circuit court ordered a new trial based on its post-trial discovery that a juror, Tanya G., had not revealed during voir dire that she had been a victim of two prior incidents of sexual assault and its findings that these experiences made her biased against Funk. The issue presented in this case is whether Tanya G. was biased against Funk, thereby depriving Funk of his constitutional right to an impartial jury. This issue requires us to address three sub-issues: (1) whether Tanya G. failed to respond to a material question during voir dire, (2) whether the circuit court's finding that Tanya G. was subjectively biased against Funk was clearly erroneous, and (3) whether, as a matter of law, a reasonable judge could have concluded that a reasonable person in Tanya G.'s position could not be impartial, and therefore, Tanya G. was objectively biased against Funk.

¶ 2. We conclude that Tanya G. failed to respond to a material question during voir dire when Funk's attorney asked if anyone on the jury panel had previously testified in a criminal case. We also conclude that the circuit court's finding that Tanya G. was subjectively biased against Funk is unsupported by facts of record and is clearly erroneous. Finally, we conclude that the facts necessary to ground a circuit court's reasonable legal conclusion that a reasonable person in Tanya G.'s position could not be impartial were not developed in this case, and therefore the circuit court's conclusion that Tanya G. was objectively biased was erroneous. Accordingly, we reverse the court of appeals order and reinstate the guilty verdict and judgment of conviction.

---

[2] The Honorable John P. Roemer, Jr. of Juneau County presided.

## I. BACKGROUND

¶ 3. Funk was charged with two counts of sexual assault of a child under 13 years of age, contrary to Wis. Stat. § 948.02(1) (2005–06).[3] The charges were based on two encounters with C.M.F., who at the time was ten years of age. Specifically, Funk was alleged to have performed oral sex on C.M.F. and also to have anally penetrated the young girl. The alleged incidents occurred at C.M.F.'s home when her mother was at work. At the time, Funk was the boyfriend of C.M.F.'s mother.

¶ 4. In late April of 2008, Funk was tried to a jury for the assaults of C.M.F. Relevant to the issue in this case is what occurred during voir dire. First, toward the beginning of voir dire, the court highlighted the nature of the case and noted that the jurors would be asked whether they, themselves, or someone they knew, had ever been a victim of sexual assault. The court emphasized that the jurors could discuss any sensitive issues in chambers:

> Now, one of the questions is going to be, I believe is, have anyone of you been a victim of sexual assault, or a brother or sister who's been sexually assaulted; possibly a neighbor of sexual assault?
>
> With respect to that question, to be quite frank with you, if somebody asked me, have you ever been a

---

[3] Wisconsin Stat. § 948.02(1) (2005–06) provides:

Sexual assault of a child. (1) First Degree Sexual Assault. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of one of the following:

. . .

(b) If the sexual contact or sexual intercourse did not result in great bodily harm to the person, a Class B felony.

victim of sexual assault, I wouldn't answer it, but you are under oath; maybe it's a brother or a sister, maybe it's a neighbor, or maybe it's yourself.

We could go into chambers, if you wish to; we certainly don't have to. You need to be honest. You need to answer the question, and what we will do is to avoid any embarrassment, we can go into chambers.

Despite the court's proclamation that these questions would be asked, neither the court nor the attorneys asked whether any juror had been a victim of sexual assault or whether any juror knew someone who had been a victim of sexual assault.

¶ 5. Other questions asked by the parties, however, did lead to the disclosure by some jurors that they personally, or someone they knew, had been a victim of sexual assault. For example, the State asked: "Have you, or any of your family members, or close friends ever been accused of a crime by law enforcement?" In response to this question, Juror E.[4] disclosed that he had a friend who had been accused of a crime in a "situation like this." The State asked to question Juror E. in chambers. In chambers, Juror E. disclosed that a close friend of his had recently been caught trying to entice underage girls into having sexual relations, but assured the court he could still be fair and impartial to Funk. The court did not excuse Juror E.

¶ 6. The State also asked: "Now, this case, as Judge Roemer noted, involves allegations of sexual assault of a child. Based upon those allegations, those charges, does anyone here believe they would have a difficult time being fair and impartial both to the State and to the Defendant?" In response to this question, two

[4] We use initials to protect the identities of the jurors.

jurors asked to speak privately in chambers. Juror G. disclosed in chambers that when she was nine or ten, she was sexually molested by a family member. She stated that it would be very difficult for her to put this experience aside if she were picked to sit on the jury. The court excused Juror G. The other juror, Juror J., disclosed that her granddaughter had been sexually assaulted and that there was currently a trial going on in Florida related to the assault. She said she did not know if she could be fair and impartial to Funk. The court excused Juror J.

¶ 7. The court replaced the two excused jurors.[5] The State asked the two new jurors if they would have answered any of the previous questions affirmatively. Both jurors responded by requesting to go into chambers. Of the two new jurors, one disclosed that he had heard about the case. The court did not excuse the juror based on this information. The other new juror, Juror D.,[6] disclosed that her ex-husband was raped when he was 14. She stated that she would rather not sit on the jury. Consequently, Juror D. was excused from service.

¶ 8. Juror S. replaced Juror D. Juror S. was similarly questioned about whether he would have answered affirmatively to any of the previous questions. Juror S. asserted that he would have, but that he did not need to go into chambers to discuss the answer privately. He then stated, in open court, "It has to do with knowing someone about a sexual assault case. My

---

[5] The replacement jurors had been in the room during the previous questioning, but were not actively answering the questions.

[6] There appears to be an error in the voir dire transcript because the transcript reflects the juror we now refer to as Juror D. as being Juror G. However, Juror G. had already been excused at the time that the questioning of Juror D. took place.

uncle went to prison for it, and I don't think I could be fair to the party." The court excused Juror S.

¶ 9. In addition to the above questions asked by the State, the panel was asked several other times if any juror believed he or she could not be fair to Funk or the State.[7] These questions did not lead to any further assertions of partiality.

¶ 10. Of particular importance, Funk's attorney asked if any juror had ever testified as a witness before: "Anyone ever go to court to testify in a criminal case as a witness? Anyone ever go to court to testify in a civil case as a witness?" While numerous jurors answered "yes" to this question and explained the circumstances under which they had testified, Tanya G. did not respond. The State also asked if anyone had ever had contact with the Juneau County District Attorney's Office. Several jurors responded in the affirmative to this question. Similarly, Tanya G. remained silent when this question was asked. A review of the

---

[7] Toward the end of its voir dire questioning, the State asked: "[I]s there anything that, while you are sitting there, you were saying, 'I wish he'd ask this.' And I didn't, but you just wanted to tell me something about your service as a juror in this trial? Anything at all?" The State closed its voir dire questioning by asking, "Ladies and gentlemen, is there anything that would make it difficult for you to serve as fair and impartial jurors?"

In addition, defense counsel concluded his voir dire by asking, "Is there anything about this case, sexual intercourse of a child, two counts, anything about questions that Judge Roemer has asked you, [the State] has asked you, or I have asked you, that make you think you can't sit on this jury? No hands, so then, everyone thinks they can sit on this case and hear what comes from this witness stand, and what Judge Roemer instructs you as far as the law is concerned and base your decision in this case solely on what happens in this courtroom. Agreed? Thank you."

voir dire transcript shows that Tanya G. did not respond individually[8] to any question posed during voir dire.

¶ 11. Tanya G. was selected to sit on the jury. During the two-day trial, C.M.F. testified about the assaults. Moreover, both N.M.F., Funk's 13–year-old daughter, and A.M.F., Funk's 14–year-old daughter, testified, corroborating much of C.M.F.'s story.[9] The jury convicted Funk of both counts of sexual assault of a child under 13 years of age.

¶ 12. Sometime after the trial, Funk learned that Tanya G. had been a victim of sexual assault. Consequently, several days before his scheduled sentencing, Funk moved to vacate the judgment of conviction and for a new trial on the grounds that Tanya G. was biased against him, and therefore, he had been deprived of his constitutional right to an impartial jury. According to Funk's motion, Tanya G. was the victim in an 18–count sexual assault case that occurred in 1998.

¶ 13. The 1998 sexual assaults occurred when Tanya G. was ten years old and involved Tanya G.'s school-bus driver touching her private areas when she would get on and off the bus. The abuse happened on numerous occasions and Tanya G.'s two younger sisters were also victims. Tanya G. reported the abuse to the authorities and was questioned by a Juneau County detective about the assaults.

---

[8] There were several questions posed to the entire panel that produced a collective response. Assumedly, Tanya G. responded to these questions.

[9] N.M.F. testified that she saw her father's penis in C.M.F.'s mouth, and A.M.F. testified that she saw C.M.F. standing, with her pants down, in front of Funk's chair on the day of the assaults.

¶ 14. Subsequent to Funk's motion to vacate the judgment, it was also learned that Tanya G. had been the victim of a sexual assault that occurred in January of 2005. According to the criminal complaint issued for the 2005 incident, Tanya G. was at a party when the perpetrator, Julian C., locked Tanya G. in a bedroom and forced her to have sexual intercourse with him. Tanya G. testified during the preliminary hearing in the case against Julian C. Following the preliminary hearing, Julian C. pled no contest and was sentenced. Tanya G. was 17 years old at the time of the assault by Julian C.

¶ 15. In response to this newly discovered information about Tanya G., the circuit court held a post-conviction evidentiary hearing at which Tanya G. testified. At the hearing, Tanya G. confirmed that her elementary-school bus driver had sexually molested her. She explained that the abuse started when she was in kindergarten and that it occurred "every day" she rode the bus from kindergarten through third grade. Moreover, Tanya G. testified that she witnessed the bus driver abuse her two younger sisters. Tanya G. reported the abuse to the authorities, but the record does not reflect that she testified in any proceeding related to the abuse. Tanya G. also confirmed at the post-conviction hearing that she had been raped by Julian C. when she was 17 years old.

¶ 16. The circuit court questioned Tanya G. about whether the allegations against Funk made her uncomfortable:

[The Court]: Now, the question I have for you is, when you heard what the allegations were involving Mr. Funk, did you feel uncomfortable at that point in time?

[Tanya G.]: No.

381

[The Court]: You didn't feel uncomfortable whatsoever?

[Tanya G.]: No.

The court then asked Tanya G. why she did not disclose each specific incident of sexual assault. With regard to the sexual assault by the bus driver, Tanya G. responded that she did not think she was allowed to talk about it because, under the settlement agreement in the case, her lawyer had told her that if she talked about it, she would be fined $5,000.[10] Her explanation for why she did not disclose that her sisters had been victims of sexual abuse was: "I understand that I should have said something, but since my sisters have nothing else on their records indicating sexual assault, I wasn't allowed to put them in jeopardy."

¶ 17. With regard to the assault by Julian C., Tanya G. stated that she did not disclose the incident to the court "[b]ecause it's my past. I don't go from day to day saying that this guy raped me, he did this. It's not the way I live my life. I put it in the back of my head, and I don't reveal it ever again."

¶ 18. At the post-conviction hearing, Tanya G. consistently denied that the nature of the allegations against Funk caused her to recall her past experiences with sexual assault during Funk's trial, or that she had prejudged Funk in any way.[11] She also noted that she did not discuss that she had been a victim of sexual assault with any other jurors. Tanya G. was never asked

[10] The requirement that Tanya G. not disclose the assaults is seemingly part of a March 2008 settlement agreement in a civil case related to the sexual assaults by the bus driver. The suit was brought by Tanya G. and her parents against the school district.

[11] For example, one line of questioning went as follows:

why she did not respond to the question about whether any juror had been a witness in a criminal case.

¶ 19. The circuit court expressed its difficulty in understanding Tanya G.'s answers. The court said, "it's not so much that I'm not taking you at face value, but I

[The Court]: At [the point you heard the details of the allegations against Funk], did you have an occasion to think about what had happened to you then?

[Tanya G.]: No

[The Court]: So, when you were dealing with those incidences that related to Mr. Funk, you did not think about the time that you and your sisters were sexually assaulted?

[Tanya G.]: No.

[The Court]: Nor did you think about the time involving [Julian C.]?

[Tanya G.]: No.

[The Court]: With regard to the sexual assaults, did you harbor any hard feelings to Mr. Funk since you, in the past, had been a victim of sexual assault?

[Tanya G.]: No.

[The Court]: With respect to the evidence, did you feel uncomfortable hearing evidence involving the sexual assault of a child involving Mr. Funk?

[Tanya G.]: No.

[The Court]: What you are indicating is that after hearing the case of that trial, that you didn't ruminate or think about your occasions whatsoever that you were assaulted?

[Tanya G.]: No.

. . .

[The Court]: With respect to the deliberations, as I understand your testimony, while you were deliberating in terms of your past regarding [the sexual assaults to which you were a victim], they did not come up in your mind whatsoever?

[Tanya G.]: No.

just have a hard time understanding, but it seems to me that the incidences that involved you would probably be some of the most devastating of a person's life."

¶ 20. Following the post-conviction hearing and a review of the voir dire transcript, the circuit court determined that at no time during voir dire was the question asked: " 'Have you been a victim of a sexual assault,' or, 'Have you or your family been victims of sexual assault?' " However, the court concluded that Tanya G. did not respond to a material question when Funk's attorney asked whether anyone had testified as a witness in a criminal case. This, the court concluded, was an incorrect answer given that Tanya G. had testified at Julian C.'s preliminary hearing.

¶ 21. The court then concluded that Tanya G. was both subjectively and objectively biased. With respect to subjective bias, the court opined:

> I have a very difficult time when an individual takes the voir dire oath, and I am not going to recite it, but swears to tell the truth, the whole truth to questions asked of you to a very solemn occasion, there's a black-robed man up here, and she did not answer affirmatively to the question of whether she was a victim of assault, or more specifically, as I've previously found, that she could not recall these incidences.
>
> . . .
>
> Now, I'm not calling Tanya [G.] a liar. I believe all of us view things through [] a certain prism, but I have a very exceedingly, exceptionally difficult time finding subjectively that this woman who, as a young child, and who has as a young woman, been sexually assaulted, and hearing the testimony of three children, who, as one who was sexually assaulted, she didn't put that aside. So, subjectively, I do find there is bias.

¶ 22. With respect to objective bias, the court noted that simply because Tanya G. was a victim of sexual assault, she was not precluded from sitting on the jury. Rather, the court considered whether "a reasonable person in [Tanya G.'s] position, could they be impartial, objectively?" In its analysis, the court compared the sexual assaults inflicted upon Tanya G. with the sexual assaults at issue in Funk's case. The court noted that Tanya G. was assaulted by her bus driver at approximately the same age as C.M.F., when Funk's alleged assaults occurred. The court also pointed out that Tanya G.'s sisters were sexually assaulted at the same young age, and noted that in Funk's case, both of Funk's daughters, who referred to C.M.F. as their "sister," had testified.

¶ 23. In addition, the court noted that Tanya G. was sexually assaulted again when she was 17. The court then concluded, "I believe that objectively when I look at the case that was tried, I look at this juror's past, objectively I find that the juror could not be fair and impartial." As a result of the circuit court's conclusion that Tanya G. was biased against Funk, the court vacated Funk's guilty verdict and judgment of conviction and ordered a new trial.

¶ 24. The State appealed. The court of appeals affirmed in an unpublished order. *State v. Funk,* No. 2008AP2765–CR, unpublished order (Wis. Ct. App. Apr. 28, 2010). On appeal, the State argued that the circuit court improperly found that Tanya G. failed to answer a material question because Funk's motion focused on whether Tanya G. failed to answer whether she had been a victim of sexual assault, when no such question was asked of the jury panel. *Id.* at 6. The court of appeals rejected this argument, relying on Tanya G.'s failure to answer several questions correctly, "including

whether she had any past contacts with the district attorney's office and any prior involvement in a civil case, as well as whether she had testified in a criminal case." *Id.* at 7.

¶ 25. Moving to subjective bias, the court of appeals rejected the State's argument that the circuit court was actually applying an objective test. *Id.* at 8. Instead, it concluded that "[l]ooking at all of the court's comments together, we are persuaded that the court was in fact rejecting Tanya G.'s testimony that she did not recall or think about any of her own past experiences of sexual assault or involvement in the court cases stemming from them." *Id.* In other words, Tanya G. "was simply not credible." *Id.* at 9.

¶ 26. The court of appeals did not address objective bias, noting that its affirmation of the circuit court's findings that Tanya G. incorrectly answered a material question and that she was subjectively biased was sufficient to support the circuit court's exercise of discretion. *Id.* at 9–10.

¶ 27. Judge Lundsten filed a dissenting opinion in which he concluded that the circuit court "misapprehended what is required for findings of subjective bias and objective bias." *Id.* at 10. Namely, when analyzing subjective bias, Judge Lundsten concluded that the circuit court disregarded Tanya G.'s explanations and answers and instead substituted its own judgment as to how a person in Tanya G.'s position should have felt. *Id.* at 10–11. In his brief discussion of objective bias, Judge Lundsten declared that "[i]t is sufficient to say that I conclude that the pertinent voir dire questions were so inartfully posed that Tanya G.'s non-answers cannot reasonably be used to support a finding of objective bias." *Id.* at 11.

¶ 28. We granted review and now reverse the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶ 29. We address whether juror Tanya G. was biased against Funk thereby depriving him of his constitutional right to an impartial jury. In so doing, we determine whether Tanya G. was subjectively or objectively biased against Funk. *See State v. Faucher,* 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999); *State v. Wyss,* 124 Wis. 2d 681, 726, 370 N.W.2d 745 (1985), *overruled on other grounds by State v. Poellinger,* 153 Wis. 2d 493, 451 N.W.2d 752 (1990). Whether a juror was asked certain questions and incorrectly or incompletely responded to those questions is an issue of fact that we will not reverse unless it is clearly erroneous. *State ex rel. Pharm v. Bartow,* 2007 WI 13, ¶ 12, 298 Wis. 2d 702, 727 N.W.2d 1; *see also State v. Casey,* 166 Wis. 2d 341, 348, 479 N.W.2d 251 (Ct. App. 1991). However, whether the question at issue is "material" is a question of law that we review independently. *See Pharm,* 298 Wis. 2d 702, ¶ 12.

¶ 30. "[W]e will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." *Faucher,* 227 Wis. 2d at 718. Objective bias, on the other hand, is a mixed question of fact and law. *Id.* at 720. "[A] circuit court's findings regarding the facts and circumstances surrounding *voir dire* and the case will be upheld unless they are clearly erroneous. Whether those facts fulfill

the legal standard of objective bias is a question of law." *Id.* Although we do not defer to a circuit court's decision on a question of law, where the factual and legal determinations are intertwined as they are in determining objective bias, we give weight to the circuit court's legal conclusion. We have said that we will reverse a circuit court's determination in regard to objective bias "only if as a matter of law a reasonable judge could not have reached such a conclusion." *Id.* at 720–21.

### B. Principles for Assessing Juror Bias

■

¶ 31. The Sixth Amendment of the United States Constitution[12] and Article I, Section 7 of the Wisconsin Constitution[13] guarantee criminal defendants the right to an impartial jury. Moreover, principles of due process under which a defendant is to be judged solely on evidence adduced at trial also protect a criminal defendant's right to an impartial jury. *State v. Kiernan,* 227 Wis. 2d 736, 750, 596 N.W.2d 760 (1999). "Prospective jurors are presumed impartial." *State v. Louis,* 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990). The party challenging a juror's impartiality bears the burden of rebutting this presumption and proving bias. *Id.*

---

[12] The Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

[13] Article I, Section 7 of the Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed . . . ."

¶ 32. When we are asked to assess juror bias, we employ a two-step test developed in *Wyss*. Under that test, in order to be granted a new trial, a litigant must prove:

> (1) that the juror incorrectly or incompletely responded to a material question on *voir dire;* and if so, (2) that it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the moving party.

*Wyss,* 124 Wis. 2d at 726.

¶ 33. Under the first step of the *Wyss* test when, as is the case here, there is no factual dispute about what was asked and answered during voir dire,[14] the issue we address is whether the question incorrectly or incompletely answered is material. We have not previously had the opportunity to fully articulate what constitutes a material question. However, our rationale in *Wyss* for rejecting the two-step test set forth by the Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548 (1984), provides insight into what constitutes a material question.

¶ 34. Pursuant to the *McDonough* test, the challenging party has to " 'first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause.' " *Wyss,* 124 Wis. 2d at 721 (quoting *McDonough,* 464 U.S. at 556). We rejected this approach in *Wyss* because we believed it to be too limited. *Id.* at 727–28.

---

[14] As discussed above, Tanya G. remained silent when the panel was asked if anyone had ever testified as a witness in a criminal matter, although she had testified at the preliminary hearing in the case against Julian C.

We explained that under the *McDonough* test, circumstances could arise where a juror's honest response to a question he or she incorrectly or incompletely responded to during voir dire may not, in and of itself, be enough to provide a valid basis to challenge the juror for cause. Nonetheless, if the question had been answered correctly at voir dire, it may have led to further questioning that would have provided a valid basis to challenge for cause. In other words, as we opined, "a narrow reading of *McDonough* fails to take into account the very real possibility that a correct and/or complete answer, although not providing a basis for challenge itself, may well provide the basis for further questions and responses that do uncover bias." *Id.* at 729.[15]

---

[15] We provided a useful example to illustrate our concern with *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548 (1984):

> Take for example a personal injury case where all prospective jurors are asked if they have any children. A juror who has a child fails to respond, but not only does she have a child, but her child had recently been badly injured in an automobile accident. If a litigant sought to have a new trial ordered once having learned of the juror's incorrect answer, that litigant would not prevail if the language of the *McDonough* opinion was applied narrowly. A correct answer on *voir dire* would have been that the prospective juror did have a child. However, applying the *McDonough* language literally, this correct answer would not prove to be sufficient to provide a basis to strike this juror for cause. The correct answer ("yes, I have a child") would not in and of itself provide a basis for a challenge for cause. However, if further inquiry were allowed, it would reveal that not only did she have a child, but that that child had been seriously injured in an automobile accident and, possibly that she harbored antagonistic feelings against drivers of automobiles who caused accidents and insurance companies that contested benefits. A complete inquiry would have revealed that the prospective juror was sufficiently biased to provide a valid basis for a challenge for cause.

*State v. Wyss,* 124 Wis. 2d 681, 728–29, 370 N.W.2d 745 (1985), *overruled on other grounds by State v. Poellinger,* 153 Wis. 2d 493, 451 N.W.2d 752 (1990).

¶ 35. While this discussion in *Wyss* was used as support for our rejection of the second step of the *McDonough* test, it also is telling about what constitutes a material question under the Wisconsin juror bias test. Our discussion demonstrates that it is important to consider follow-up questions that would likely have been asked had the juror answered the asked question correctly. Consequently, material questions are not only those questions to which the direct or immediate answer reveals a juror's bias. Rather, if the defendant proves that the question and its correct answer would have incited further inquiry, inquiry that would likely have uncovered bias, we consider the initial question to be material. Stated another way, if the question the juror incompletely and/or incorrectly answered is of consequence to the determination of bias, it is material.

¶ 36. In *Faucher*, we engaged in a thorough analysis of the three types of juror bias: statutory bias, subjective bias, and objective bias.[16] *Faucher*, 227

---

[16] Prior to this court's discussion of juror bias in *State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999), Wisconsin jurisprudence used inconsistent terms to describe statutory, subjective, and objective juror bias. *Id.* at 706. Specifically, prior to *Faucher*, Wisconsin juror bias jurisprudence used the terms "implied," "actual," and "inferred" bias. *Id.* While we cautioned in *Faucher* when we adopted the terms "statutory," "subjective," and "objective" to describe juror bias that they "do not neatly correspond to the terms 'implied,' 'actual,' and 'inferred' as we have used those terms in our prior cases," we noted that "for the purposes of providing the circuit courts and practitioners with guidance, we do acknowledge that subjective bias is most closely akin to what we had called actual bias, and that objective bias in some ways contemplates both our use of the terms implied and inferred bias." *Id.* at 716.

Wis. 2d at 717–19. The only issues presented in this case are whether Tanya G. was subjectively or objectively biased.[17]

■ ■

¶ 37. The inquiry into whether a juror is subjectively biased is focused on the specific juror's state of mind. *Id.* at 718. Jurors are subjectively biased when they have "expressed or formed any opinion" about the case prior to hearing the evidence. *Id.* at 717. A juror may reveal his or her subjective bias either through words, namely his or her explicit assertion of bias or partiality, through demeanor, or through a combination of the two. *Id.*; *see also State v. Lindell,* 2001 WI 108, ¶ 36, 245 Wis. 2d 689, 629 N.W.2d 223. "While there may be the occasion when a prospective juror explicitly admits to a prejudice, or explicitly admits to an inability to set aside a prejudice, most frequently the prospective juror's subjective bias will [] be revealed [only] through his or her demeanor." *Faucher,* 227 Wis. 2d at 718. When subjective bias is evidenced by a juror's demeanor, the circuit court's assessment will often rest on its analysis of the juror's honesty and credibility. *Id.*

■

¶ 38. Objective bias, on the other hand, shifts the inquiry from the specific juror's state of mind to an inquiry into "whether [a] reasonable person in the individual prospective juror's position could be impartial." *Id.* The focus is on the facts and circumstances surrounding the voir dire and trial, and whether given

---

[17] A juror is statutorily biased regardless of his ability to remain impartial, if he is related by "blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case." Wis. Stat. 805.08(1) (2009–10); *see also Faucher,* 227 Wis. 2d at 715 (citing 805.08(1) (1995–96)).

those facts and circumstances, a reasonable person in the juror's position would be biased. *Id.* at 718–19.

¶ 39. In cases involving a juror who was not forthcoming during voir dire and subsequently sat on the jury, a circuit court is to consider the following three, non-exclusive, factors to determine objective bias:

> (1) did the question asked sufficiently inquire into the subject matter to be disclosed by the juror;

> (2) were the responses of other jurors to the same question sufficient to put a reasonable person on notice that an answer was required;

> (3) did the juror become aware of his or her false or misleading answers at anytime during the trial and fail to notify the trial court?

*Id.* at 727 (quoting *Wyss,* 124 Wis. 2d at 731).[18] We

---

[18] Justice Bradley's dissent mistakenly infers that *Faucher* overruled *Wyss,* thereby discarding this analysis. Justice Bradley's dissent, ¶ 86. Justice Bradley's dissent misreads *Faucher.* While, as discussed above, *see supra* note 16, we adopted new terms to discuss the three types of juror bias in *Faucher,* we explicitly stated that in adopting these new terms, we were not changing the existing juror bias jurisprudence. *Faucher,* 227 Wis. 2d at 706 ("Our adoption of these new terms *does not,* however, change our existing jurisprudence.") (emphasis added).

In an attempt to argue that the jurisprudence was changed despite our proclamation in *Faucher* that we were not changing the existing jurisprudence, the dissent cites to case law describing the state of juror bias law pre-*Faucher.* Specifically, the dissent takes language from *State v. Oswald,* 232 Wis. 2d 103, 606 N.W.2d 238 (Ct. App. 1999) and *State v. Wolfe,* 2001 WI App 136, 246 Wis. 2d 233, 631 N.W.2d 240. Justice Bradley's dissent,

examine these questions because a juror's responses under the facts and circumstances of a particular case

¶ 93. The language cited by the dissent, however, refers to the terminology used pre-*Faucher* and its confusing and inconsistent application. It does not refer to the *Wyss* test for objective bias.

For example, in full, the sentence the dissent cites from *Oswald* reads: "In [*Faucher* and other cases published at the same time], the court clarified the previously turbid state of juror bias jurisprudence in Wisconsin, adopting the terms 'statutory,' 'subjective' and 'objective' bias to replace the misused 'implied,' 'actual' and 'inferred' bias terminology." *Oswald,* 232 Wis. 2d at 110. Likewise, when referring to the "murky waters" of pre-*Faucher* juror bias jurisprudence, the *Wolfe* court was referring to the "misused 'implied,' 'actual' and 'inferred' terminology." *Wolfe,* 246 Wis. 2d 233, ¶ 19. What is more, the "new approach" that Professors Blinka and Hammer described in their 1999 article was the new terminology adopted by the *Faucher* court. Daniel D. Blinka & Thomas J. Hammer, *Wisconsin Lawyer*, Sept. 1999, at 30, 40. As discussed above, we are in complete agreement with the dissent that *Faucher* changed juror bias terminology. The dissent errs, however, in attempting to expand these changes, and reading them to overrule the test set forth in *Wyss*.

Moreover, as support for its proposition that *Faucher* discarded the *Wyss* test, the dissent points out that *Faucher* "did not apply the three-part test at all." Justice Bradley's dissent, ¶ 86. While this assertion may be true, *Faucher* makes clear that the *Wyss* analysis is to be employed in "lack of juror candor cases," such as the case before us. *Faucher,* 227 Wis. 2d at 726–28. *Faucher* was not a "lack of juror candor" case. *Faucher* concerned a juror who knew a witness and said that he believed that the witness was a " 'person of integrity' who 'wouldn't lie.' " *Id.* at 705. Faucher moved to strike the prospective juror for cause and his motion was denied. *Id.* Therefore, there was no reason to employ the *Wyss* analysis in *Faucher.* Additionally, neither *Oswald* nor *Wolfe* are "lack of juror candor" cases.

Finally, the dissent cites to *State v. Wilkinson,* No. 02–1206, unpublished per curiam, ¶ 2 (Wis. Ct. App. Jan. 29, 2003). *See* Justice Bradley's dissent, ¶ 96. While *Wilkinson* also is not a "lack of juror candor" case, and equally inapplicable here, we

must be compared with those of a reasonable person in the position of the juror. *State v. Delgado*, 223 Wis. 2d 270, 281–82, 558 N.W.2d 1 (1999).

¶ 40. Sexual assault cases can be difficult for any juror. However, the "failure of a juror in a sexual assault case to answer correctly or completely a question during *voir dire* about his or her experience of sexual assault does not constitute bias *per se*." *Id.* at 282; *see also State v. Erickson*, 227 Wis. 2d 758, 777, 596 N.W.2d 749 (1999). The answers to the questions suggested in *Wyss* and *Delgado* will provide insight into whether the juror was so emotionally affected by the prior sexual assault that a reasonable person in the juror's position could not be impartial. *Delgado*, 223 Wis. 2d at 285–86. In our review, we perform an independent application of these factors to the facts and circumstances of the case to determine whether the juror was objectively biased as a matter of law. *See id.* at 283–85.

C. Application

a. Material question

¶ 41. We now apply the legal standards set forth above to the facts and circumstances of this case. Beginning with the first step of the two-step *Wyss* test, we agree with the circuit court and court of appeals that

---

underscore the impropriety of citing to a 2003 unpublished, unauthored court of appeals opinion, a citation contrary to this court's rules. To explain further, subsequent to July 1, 2009, an unpublished, authored opinion may be cited for persuasive, but not precedential value. Wis. Stat. § 809.23(3)(b). However, the *Wilkinson* decision does not come within § 809.23(3)(b) because it is a per curiam decision and it was not issued subsequent to July 1, 2009. Consequently, it is an improper citation.

Tanya G. failed to answer defense counsel's questions: "Anyone ever go to court to testify in a criminal case as a witness? Anyone ever go to court to testify in a civil case as a witness?"

¶ 42. Moreover, given the facts of this case, this question was material. Funk's argument throughout has been that Tanya G. was biased based on her previous experiences as a victim of sexual assault. Had Tanya G. correctly responded when asked if she had testified in a criminal case, this would likely have incited further questioning that may have uncovered that Tanya G. had been a victim of sexual assault.

¶ 43. The likelihood that an affirmative response by Tanya G. may have led to the eventual disclosure that she had been a victim of sexual assault is evidenced by the responses of the other jurors to this question. When Funk's attorney asked whether anyone on the panel had testified as a witness, four jurors answered in the affirmative. All four disclosed the nature of the case in which he or she had testified, either in their initial answer to the question or in response to a follow-up question by Funk's attorney. Consequently, had Tanya G. correctly, and affirmatively, responded to that question, putting the court on notice that she had previously testified in a criminal case, it is likely Funk's attorney would have asked Tanya G. details about the nature of the case in which she testified. The court, therefore, would have discovered that the case was a sexual assault case and that Tanya G. was the victim of that assault. As such, the question was of consequence to the bias determination at issue here and is material.

### b. Subjective bias

¶ 44. Moving to the second step of *Wyss,* whether Funk proved that it was more probable than not that

under the facts and circumstances surrounding this case, Tanya G. was biased against him, we first address subjective bias. The question that Tanya G. did not answer was whether she had been a witness in a criminal case. However, at the post-conviction hearing, no one asked her why she did not respond to that question. Therefore, there is no record of why she failed to answer. All of the questioning of Tanya G. in the post-conviction hearing focused on why she had not revealed that she was a victim of sexual assault. However, no question about being the victim of sexual assault was asked during voir dire.

¶ 45. As explained above, the inquiry required by law to determine whether Tanya G. is subjectively biased is focused on her state of mind. *Faucher*, 227 Wis. 2d at 718. A juror may reveal subjective bias by an explicit assertion of bias. *Id.* at 717. Tanya G. did not say that she was biased against Funk. To the contrary, Tanya G. explicitly and consistently asserted at the post-conviction evidentiary hearing that she was *not* biased against Funk. *See, e.g., supra* note 11. Moreover, during voir dire, Tanya G. never indicated she was biased against Funk despite the panel being asked numerous times whether anyone would have difficulties being impartial.

¶ 46. Subjective bias also may be revealed through a juror's demeanor, with a determination of bias resting on whether the circuit court finds the juror credible. *Faucher*, 227 Wis. 2d at 718. Given this standard, the circuit court's explanation for its finding that Tanya G. was subjectively biased is difficult to understand. In the portion of the circuit court's oral decision that explained its finding, the circuit court did not describe Tanya G.'s demeanor, either at voir dire or at

the post-conviction hearing, and explain how her de-
meanor demonstrated to the court that she was biased.
Instead, the circuit court expressed its belief in her
responses: "Now, I'm not calling Tanya [G.] a liar. I
believe all of us view things through [] a certain prism."

¶ 47. The court then found Tanya G. subjectively
biased based on Tanya G.'s failure to answer a question
that was never asked and the court's own belief that
someone in Tanya's position could not be impartial:

> I have a very difficult time when an individual takes the
> voir dire oath, and I am not going to recite it, but
> swears to tell the truth, the whole truth to questions
> asked of you to a very solemn occasion, there's a
> black-robed man up here, and she did not answer
> affirmatively to the question of whether she was a
> victim of assault, or more specifically, as I've previously
> found, that she could not recall these incidences.
>
> . . .
>
> I have a very exceedingly, exceptionally difficult time
> finding subjectively that this woman who, as a young
> child, and who has as a young woman, been sexually
> assaulted, and hearing the testimony of three children,
> who, as one who was sexually assaulted, she didn't put
> that aside. So, subjectively, I do find there is bias.

██ ██

¶ 48. Assessing what someone in Tanya G.'s posi-
tion could or could not have done is not the correct
standard on which to decide whether a juror is subjec-
tively biased. *See Faucher*, 227 Wis. 2d at 718. A finding
of subjective bias must be based on factual findings that
show the specific juror's state of mind. *Id.* No such
findings were made here. To the contrary, the circuit
court stated that it believed Tanya G.'s assertion that
she was impartial. The court also did not make any

findings about her demeanor that indicated subjective bias. Rather, the court determined that Tanya G. was subjectively biased based on her failure to answer a question that was never asked and its finding that someone who had been sexually assaulted in the manner that Tanya G. was, could not be impartial in a sexual assault trial. Accordingly, the circuit court's finding that Tanya G. was subjectively biased against Funk is not supported by facts of record and is clearly erroneous.

### c. Objective bias

■

¶ 49. Next, we turn to objective bias and conclude that the circuit court erred as a matter of law when it concluded that Tanya G. was objectively biased against Funk. Objective bias exists when a reasonable person in the juror's position could not be impartial. *Id.* The fact that a juror has been a victim of sexual assault does not make him or her per se biased against the defendant in a sexual assault case. *Delgado,* 223 Wis. 2d at 285.

¶ 50. *Delgado* is instructive as we consider whether Funk has proved objective bias. As aforementioned, in deciding whether there was objective bias in *Delgado,* we considered the following three non-exclusive factors:

> (1) did the question asked sufficiently inquire into the subject matter to be disclosed by the juror;

> (2) were the responses of other jurors to the same question sufficient to put a reasonable person on notice that an answer was required;

> (3) did the juror become aware of his or her false or misleading answers at anytime during the trial and fail to notify the trial court?

*Id.* (citing *Wyss,* 124 Wis. 2d at 731); *see also Faucher,* 227 Wis. 2d at 727.

¶ 51. In *Delgado,* the defendant was tried for first-degree sexual assault of two young girls, aged seven and nine. *Id.* at 273. Similar to the case at hand, in *Delgado,* sometime after the defendant was found guilty of the crime, it came to the court's attention that one of the jurors, Juror C., had herself been a victim of sexual assault, but did not disclose this during voir dire.[19] *Id.* at 276. The circuit court held two evidentiary hearings on the defendant's motion for a new trial to determine whether, under the facts and circumstances surrounding the case, the two-step *Wyss* test was satisfied.[20] *Id.* at 276–78. During the first hearing, Juror C. explained why she did not respond to the questioning that related to being the victim of sexual assault. *Id.* at 276. At the second hearing, evidence was presented demonstrating that during jury deliberations, Juror C. indicated that she had previously been a victim of

[19] Contrary to the situation here, the jury panel in *State v. Delgado,* 223 Wis. 2d 270, 588 N.W.2d 1 (1999), was asked: "Are there any members of the jury panel who either have a close friend or close relative or you yourself who have been the victim of a sexual assault, either as a child or as an adult?" *Id.* at 274–75. Juror C. did not disclose that she had been a victim of the crime of sexual assault. *Id.* at 275.

[20] Following the first hearing, the circuit court found that the first step of the *Wyss* two-step test had not been satisfied, i.e., that Juror C. had not incorrectly or incompletely answered a material question during voir dire. *Id.* at 277. The defendant appealed this finding. On appeal, the court of appeals disagreed and concluded that Juror C. failed to correctly or completely answer a material question during voir dire. *Id.* It remanded for a hearing on whether, under the facts and circumstances surrounding the case, the second step of the *Wyss* test was satisfied, i.e., whether Juror C. was biased. *Id.* at 278.

sexual assault. *Id.* at 278. After listening to the evidence presented at the second hearing, the circuit court concluded that Juror C. was impartial and therefore, the second step of *Wyss* was not satisfied. *Id.* at 278–79.

¶ 52. On review, we noted that the circuit court did not consider the three factors set out above.[21] We conducted an independent review of the facts and circumstances of *Delgado* as they applied to the three factors. *Id.* at 283–86. Based on our independent review, we concluded Juror C. was objectively biased, and we ordered a new trial. *Id.*

¶ 53. With regard to the first factor, whether the question asked sufficiently inquired into the subject matter to be disclosed by the juror, the panel in *Delgado* was explicitly asked whether anyone in the panel had been a victim of sexual assault. The exact question was: "Are there any members of the jury panel who either have a close friend or close relative or you yourself who have been the victim of a sexual assault, either as a child or as an adult?" *Id.* at 283. Juror C. remained silent. *Id.* at 275. We agreed with the court of appeals that this explicit question inquired into the jurors' prior personal experiences with sexual assault and that "[n]othing in the record support[ed] a conclu- ·

---

[21] *Delgado* was decided six months before *Faucher* and therefore, the term "inferred" bias is used instead of the term "objective" bias. However, in *Delgado,* we were using an objective standard when deciding whether there was "inferred" bias. As evidence, in our discussion of "inferred" bias, we noted that the circuit court used an incorrect analysis "to determine whether from *an objective standard*" there was bias. *Id.* at 285 (emphasis added). Therefore, to avoid confusion, throughout this discussion, we will refer to the "inferred" bias in *Delgado* as if it were referred to in *Delgado* as "objective" bias.

sion that the phraseology of the question justified [J]uror C.'s silence." *Id.* at 284.

¶ 54. With regard to *Delgado*'s consideration of the second factor, whether the responses of other jurors to the same question sufficiently put a reasonable person on notice that an answer was required, we opined that the only reasonable conclusion was that Juror C. was put on such notice. *Id.* Specifically, we pointed out that during voir dire, four jurors, in response to the above question and in open court, divulged that a close friend or relative had been sexually assaulted. *Id.*; *see also Id.* at 275.

¶ 55. With regard to the third factor, whether Juror C. became aware of her false or misleading answers at any time during the trial and failed to inform the trial court, we noted that Juror C. became aware of her failure to answer the question during jury deliberations. *Id.* at 284. As the post-conviction evidentiary hearing revealed, during deliberations Juror C. became angry with one of the other jurors who did not think the State had proved its case against the defendant. Through anger, she disclosed her prior experience with sexual assault, stating, "You don't know what it feels like, but I happen to know what it feels like to be taken advantage of." *Id.* at 278. The holdout juror replied by asking Juror C. why she did not report the abuse during voir dire. *Id.*

¶ 56. After considering the three factors for assessing whether the juror was biased, as well as the facts and circumstances of the case,[22] we concluded that

[22] Juror C. had been sexually assaulted when she was six or seven by someone she knew, but that was not a relative. *Id.* at 278.

Juror C.'s emotional involvement with the case caused her to be objectively biased. *Id.* at 285–86. We stated:

> The probability that [J]uror C.'s substantial emotional involvement would adversely affect her impartiality was high. Her emotional involvement was demonstrated by the close similarity of her experience with the crimes charged, her incorrect and incomplete responses during *voir dire,* her revelation of her experience during jury deliberations, and her failure to report her omission to the court.

*Id.*

¶ 57. While *Delgado* is factually similar to the case at hand because both cases are sexual assault cases and involved a juror who failed to disclose during voir dire that she had been a victim of sexual assault, our review of the facts and circumstances of this case, in light of the three factors for assessing juror bias, requires a conclusion opposite from the one reached in *Delgado.* First, unlike the factual underpinnings of *Delgado,* the questions asked of Tanya G. during voir dire did not involve whether any juror had been a victim of sexual assault. Furthermore, at the post-conviction evidentiary hearing, Tanya G. was never asked why she did not respond to the question about whether any juror had been a witness in a criminal case, which was the question asked in voir dire to which she did not respond. Therefore, Funk did not make a record at the post-conviction hearing of why Tanya G. failed to answer the question that was asked. It was his burden to do so in order to fully evaluate Tanya G.'s potential bias against him. *Id.* at 278 (citing *Wyss,* 124 Wis. 2d at 726). Put another way, the questions asked at the post-conviction hearing do not provide a foundation on

403

which to conclude that a reasonable person in Tanya G.'s position could not impartially decide Funk's case.

¶ 58. To explain further, looking at the first factor, the questions asked of Tanya G. during voir dire did not sufficiently inquire into the subject matter of sexual assault. The material question that Tanya G. failed to answer was whether she had testified in a criminal case. This question cannot be said to sufficiently inquire into the jurors' prior personal experiences with sexual assault, which is the basis on which a new trial was ordered by the circuit court. That this unanswered question could have led to questions about sexual assault is insufficient because Tanya G. was never asked at the post-conviction hearing why she failed to respond to the question actually asked at voir dire. The overarching question when evaluating Funk's claim of objective bias is whether a reasonable person in Tanya G.'s position could be impartial. This analysis requires us to consider whether a reasonable person who had a similar level of emotional involvement with hearing the testimony about sexual assault as Tanya G. had could be impartial. The juror's level of emotional involvement is part of the "position" in which we place the reasonable person for our analysis. Tanya G.'s failure to answer the question about testifying in a criminal case, with no explanation for her silence, however, gives us no insight into whether, because of her prior experiences with sexual assault, she was emotionally involved in Funk's case and therefore unable to objectively evaluate the evidence. In other words, we are unable to place a "reasonable person" in Tanya G.'s "position" because we do not know the relevant factors that relate to her "position."

¶ 59. With regard to the second factor, the responses of the other jurors during voir dire would not

have put a reasonable juror in Tanya G.'s position on notice that she was required to disclose that she had previously been a victim of sexual assault.[23] When the circuit court proclaimed during the beginning of voir dire that one of the questions was going to be whether anyone on the panel had been a victim of sexual assault or knew someone who had been a victim of sexual assault, no one in the jury panel took this proclamation as a question that needed to be answered. The record shows that although one juror herself was a victim of sexual assault and numerous jurors on the panel knew someone who had been a victim of sexual assault, no juror responded to the circuit court's proclamation by disclosing information about sexual assault. Rather, most of the information about sexual assault came out later in voir dire in response to the attorneys' more general questions about whether those on the panel could be impartial. If Tanya G. felt she could be impartial, there was no reason for her to respond to those general questions.[24]

---

[23] Although Justice Bradley's dissent asserts that the three factors set forth in *Wyss* are no longer the correct standard under which to evaluate objective juror bias, *see supra* note 18, the dissent uses the second *Wyss* factor in conducting its analysis of whether there was juror bias in this case. Justice Bradley's dissent, ¶¶ 107–112.

[24] While the second factor is usually limited to the relevant question in the first factor, we also note that a review of the voir dire transcript does not indicate that the responses of other jurors throughout voir dire would put a reasonable juror in Tanya G.'s position on notice that she was required to disclose her prior experiences with sexual assault. Unlike the voir dire proceedings in *Delgado* where four jurors disclosed their experiences with sexual assault in open court, *Delgado*, 223 Wis. 2d at 284, only one juror, Juror S., in the case at hand, disclosed his experience with sexual assault in open court. The other jurors

¶ 60. On the other hand, the responses of other jurors to the question about whether anyone had testified in a criminal case would have put a reasonable juror in Tanya G.'s position on notice that an answer to that question was required. Four jurors responded, and in their responses, they explained the case in which they testified. These responses would have put a reasonable juror in Tanya G.'s position on notice that she should have disclosed her prior testimony. However, at the post-conviction hearing, Tanya G. was never asked why she did not answer that question.[25] Perhaps she

disclosed their experiences privately in chambers. Additionally, Juror S.'s open court disclosure did not follow a particular question to the entire panel, rather it occurred when he was called to the panel after another juror was excused, and he was asked individually if he would have answered any of the previous questions presented to the panel.

[25] Instead, much of the evidentiary hearing was focused on why Tanya G. did not respond to the circuit court's statement at the beginning of voir dire that "one of the questions *is going to be* . . . have anyone of you been a victim of sexual assault." However, as discussed, this question was never actually asked during voir dire so it was erroneous for the circuit court to expect Tanya G. to explain why she never answered it. Nonetheless, we do point out that despite what, to Tanya G., must have been a confusing line of questioning at the evidentiary hearing, Tanya G. did give explanations for not disclosing her experiences with sexual assault or her sisters' experiences, none of which implicate a bias towards Funk. For example, she did not want to be fined $5,000. *See supra* section I.

Funk argues that the reason Tanya G. gave at the evidentiary hearing for not disclosing the sexual assault by Julian C.—that it was her past and she had put it behind her—also explains why she did not respond to the question of whether she had testified before. Based on our review of the transcript of the evidentiary hearing, we do not conclude that the answer Tanya G. gave to why she failed to respond to a question that was not

understood that question in a way that required no answer or perhaps she was not paying attention and missed the question all together. The record provides no information in that regard. Simply failing to answer a question during voir dire is insufficient to prove juror bias. *Delgado,* 223 Wis. 2d at 282.

¶ 61. Finally, in regard to the third factor, unlike Juror C. in *Delgado,* there is nothing in the record indicating that Tanya G. became aware of her failure to answer the question relating to serving as a witness in a criminal case at any time during Funk's trial. Even more, this case is nothing like *Delgado* in which Juror C.'s outburst during deliberations that "I happen to know what it feels like to be taken advantage of," *id.* at 278, clearly indicates that Juror C.'s experience as a previous victim of sexual assault influenced how she viewed the case (and she was arguably using this experience to influence other jurors).

¶ 62. Accordingly, an application of the three factors to the facts and circumstances of this case gives us no insight about why Tanya G. failed to respond when the panel was asked if anyone had testified as a witness in a criminal case. The failure to answer a question on voir dire is not sufficient to conclude Tanya G. was objectively biased against Funk. *Id.* at 282. And, the failure to answer the question asked gives us insufficient information to conclude how a reasonable person in Tanya G.'s circumstances would have acted in regard to bias against Funk.

¶ 63. In sum, jurors are presumed impartial, and Funk had the burden of rebutting this presumption and

asked during voir dire (had she ever been a victim of sexual assault) can rightfully be considered her answer to a question she was not asked at the evidentiary hearing (why she didn't respond to the prior testimony question).

proving Tanya G.'s bias in this case. *Louis,* 156 Wis. 2d at 478. We agree with Judge Lundsten that the questions asked of Tanya G. were "so inartfully posed that Tanya G.'s non-answers cannot reasonably be used to support a finding of objective bias." *Funk,* No. 2008AP2765–CR, unpublished order, at 11. As such, Funk has not met his burden because there is no proof that a reasonable juror in Tanya G.'s position could not be impartial. Without such proof, the only basis on which we could conclude that she was objectively biased is to conclude she was per se biased against Funk. *Delgado* forbids such a per se bias rule based solely on having been the victim of sexual assault. *Delgado,* 223 Wis. 2d at 285. Consequently, we hold that Funk has not met his burden to prove that Tanya G. was objectively biased. Stated otherwise, the facts necessary to ground a circuit court's reasonable legal conclusion that Tanya G. was objectively biased were not developed in this case.[26] Therefore, the circuit court erred as a matter of law in concluding that a reasonable person in Tanya G.'s position could not be impartial.

## III. CONCLUSION

¶ 64. We conclude that Tanya G. failed to respond to a material question during voir dire when Funk's attorney asked if anyone on the jury panel had previously testified in a criminal case. We also conclude that the circuit court's finding that Tanya G. was subjectively biased against Funk is unsupported by facts of record and is clearly erroneous. Finally, we conclude that the facts necessary to ground a circuit court's

---

[26] Commentators have stressed the "importance of making a complete record concerning any allegation of juror bias." Blinka, *supra* note 18, at 40–41.

reasonable legal conclusion that a reasonable person in Tanya G.'s position could not be impartial were not developed in this case, and therefore the circuit court's conclusion that Tanya G. was objectively biased was erroneous. Accordingly, we reverse the court of appeals order and reinstate the guilty verdict against Funk.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 65. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I join Justice Bradley's dissent. I take this opportunity to write on the majority's application of the "subjective bias" element of juror bias.

¶ 66. In the present case we are faced with a circuit court's determination of the subjective bias of a juror. "[S]ubjective bias . . . refers to the prospective juror's state of mind." *State v. Faucher,* 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999). Subjective bias means having "expressed or formed any opinion" about the case before hearing the evidence. *Id.* Here the juror asserted that she was not biased against the defendant.

¶ 67. The circuit court is tasked with determining whether a juror is subjectively biased. The circuit court initially relies on a juror's self-assessment regarding whether she can be (or was) impartial. Yet a circuit court cannot blindly rely on a juror's self-assessment. The expressions of the juror regarding his or her impartiality "are not conclusive[;] evaluating the subjective sincerity of those expressions is a matter of the circuit court's discretion." *Faucher,* 227 Wis. 2d at 723 (quoting *State v. Sarinske,* 91 Wis. 2d 14, 33, 280 N.W.2d 725 (1979).

¶ 68. "[A] subjective inquiry will often not be susceptible to direct proof." *Faucher,* 227 Wis. 2d at 717–18. A circuit court determines whether it believes

or doubts that the juror "honestly believed that he [or she] could remain impartial." *Faucher,* 227 Wis. 2d at 723 (quoting *State v. Gesch,* 167 Wis. 2d 660, 667, 482 N.W.2d 99 (1992)).

¶ 69. A circuit court must evaluate and assess the juror's responses, the juror's demeanor, the juror's "disposition," and the juror's honesty and credibility, among other relevant facts. *Faucher,* 227 Wis. 2d at 718.

¶ 70. A juror's good-faith belief that she is not or was not biased, however, is not necessarily an accurate belief. Even if we could be assured of truthfulness, some people are incapable of making correct assessments of self, especially on an issue such as bias. A juror may emphatically believe that she is not biased, yet unknowingly lack the ability to be impartial. The circuit court must evaluate whether the juror is correct in her subjective belief or whether she is incorrect in her subjective belief. In other words, if a juror believes she can act as an impartial decision-maker, a circuit court may still conclude that the juror is not capable of being impartial.

¶ 71. A purely subjective test is a practical impossibility. A circuit court cannot look inside the heads of individuals and definitively determine their thoughts and feelings. A circuit court makes a determination regarding a person's subjective bias through the prism of its interpretation of the statements and the evidence before it. This prism is a function of the circuit court's experiences and knowledge of human nature.

¶ 72. A subjective standard is limited to an interpretation by the decision-maker of the statements that are made within the context of the evidence available, the disposition and demeanor of the individual, and other factors in the record. The more outlandish or

unreasonable the juror's position seems to a circuit court, the more likely the circuit court will find subjective bias.

¶ 73. I turn to the objective standard. An objective standard does not use a fictional reasonable person. Rather, the objective standard encompasses the characteristics of the person whose conduct is being judged. The inquiry into objective bias is whether "the reasonable person in the individual prospective juror's position could be impartial." *Faucher,* 227 Wis. 2d at 718. Thus objective bias, like subjective bias, deals with the facts relating to the specific person in question. A blurring of the subjective and objective categories is therefore inevitable. It is probable that the two categories overlap. Sarvenaz J. Raissi, Comment, *Analyzing Juror Bias Exhibited During Voir Dire in* Wisconsin: How *To Lessen the Confusion,* 84 Marq. L. Rev. 517, 539 (2000).

¶ 74. The circuit court in the present case evaluated the juror, her demeanor, her disposition, and the circumstances in the context of the case. In doing so the circuit court declared the juror subjectively biased:

> Now, I'm not calling Tanya [G.] a liar. I believe all of us view things through [] a certain prism, but I have a very exceedingly, exceptionally difficult time finding subjectively that this woman who, as a young child, and who has as a young woman, been sexually assaulted, and hearing the testimony of three children, who, as one who was sexually assaulted, she didn't put that aside. So, subjectively, I do find there is bias.

¶ 75. The circuit court was "not calling Tanya [G.] a liar," because Tanya [G.] was not lying. Tanya truly believed she could be free from bias. The law tasks the circuit court with making a determination about the

411

subjective state of mind of the juror. The circuit court concluded that the juror did not hold a correct belief that she was impartial.

¶ 76. In appellate review of a circuit court's finding of subjective bias, an appellate court determines whether the record supports "a [circuit court's] finding that the prospective juror is [or is not] a reasonable person who is sincerely willing to put aside an opinion or prior knowledge . . . ." *Faucher*, 227 Wis. 2d at 724. An appellate court defers to a large extent to the decision of the circuit court about subjective bias because the circuit court is in a superior position to assess the demeanor and disposition of prospective jurors and whether they are subjectively biased. *Faucher*, 227 Wis. 2d at 718.

¶ 77. In the present case, the circuit court determined that the juror was subjectively biased. The record supports the circuit court's determination that the juror was subjectively biased.

¶ 78. The circuit court also determined, that the juror was objectively biased. This determination is to be reversed "only if as a matter of law a reasonable judge could not have reached such a conclusion." *Faucher*, 227 Wis. 2d at 721. I cannot conclude on this record that as a matter of law a reasonable judge could not have reached the conclusion that the juror was objectively biased.

¶ 79. For the foregoing reasons, and those stated in Justice Bradley's dissent, I would affirm the circuit court order vacating the judgment of conviction and granting the defendant a new trial.

¶ 80. ANN WALSH BRADLEY, J. (*dissenting*). Day in and day out across this state, circuit court judges are on the front lines, making tough decisions. This case

reflects one of those tough decisions—ordering a new trial in a child sexual assault case.

¶ 81. In reviewing the circuit court's objective bias determination, an appellate court asks the following question: Is this a conclusion that a reasonable judge could reach? When applying this test, we give deference to the decision of the circuit court because it has special competence in making objective bias determinations. It is intimately familiar with the voir dire proceeding, and is best situated to reflect upon the prospective juror's response. *State v. Faucher*, 227 Wis. 2d 700, 720, 596 N.W.2d 770 (1999).

¶ 82. Here, the circuit court assessed the voir dire as a whole. It compared the factual similarities between Tanya G.'s assaults and the facts of this case, evaluated her nonresponsiveness, weighed her subsequent conflicting statements, and concluded, "I must follow the law." Ultimately it determined that a reasonable person in Tanya G.'s position could not be impartial. Rather than giving deference to those on the front lines making these tough decisions, the majority turns back the clock. It applies a long-discarded test which skews its analysis and leaves confusion in its wake.

¶ 83. When I apply the test adopted in *Faucher* and give the circuit court's determination the deference it deserves, I determine that a reasonable judge could conclude that Tanya G. was objectively biased. Accordingly, I respectfully dissent.

I

¶ 84. The question before this court is whether the circuit court erred in concluding that a reasonable person in Tanya G.'s position could not be impartial. The majority determines that "there is no proof that a

reasonable juror in Tanya G.'s position could not be impartial," and "[w]ithout such proof, the only basis on which we could conclude that she was objectively biased is to conclude she was per se biased against Funk." Majority op., ¶ 63.

¶ 85. In coming to that conclusion, the majority applies a three-factor test from *State v. Wyss*, 124 Wis. 2d 681, 731, 370 N.W.2d 745 (1985).[1] Majority op., ¶ 39. After applying the three factors to the facts and circumstances of the case, it concludes that "failure to answer a question on voir dire is not sufficient to conclude Tanya G. was objectively biased against Funk." *Id.*, ¶ 62. In explaining its conclusion, the majority reasons that applying the three-factor test of *Wyss* "gives us no insight about why Tanya G. failed to respond when the panel was asked if anyone had testified as a witness in a criminal case." *Id.*

¶ 86. The lack of insight provided by the application of *Wyss*'s three-part test is telling. The inadequacy of that test underscores why it was discarded over ten years ago when this court synthesized the law of juror bias in *Faucher*. Indeed, *Faucher* did not apply the three-part test at all. Instead, it fashioned a new test.

---

[1] The three factors set forth in *Wyss* are as follows:

(1) did the question asked sufficiently inquire into the subject matter to be disclosed by the juror;

(2) were the responses of other jurors to the same question sufficient to put a reasonable person on notice that an answer was required;

(3) did the juror become aware of his or her false or misleading answers at anytime during the trial and fail to notify the trial court?

*State v. Wyss*, 124 Wis. 2d 681, 731, 370 N.W.2d 745 (1985); *see also State v. Delgado*, 223 Wis. 2d 270, 588 N.W.2d 1 (1999).

¶ 87. The *Faucher* court set forth a new standard because it recognized that past decisions regarding jury bias "lacked the clarity necessary to properly guide the bench and bar." 227 Wis. 2d at 706. It explained that the inconsistent analysis and imprecise use of such terms as "implied," "actual," and "inferred" led to confusion among attorneys and judges alike.[2] *Id.* at 713.

¶ 88. *Faucher* tracked the evolution of jury bias jurisprudence by citing to seven different cases, including *Wyss* and *Delgado,* and using them as a "primer for jury bias analysis." *Id.* at 721. It harmonized the rules from these cases into a clear test for determining if it is more probable than not that a juror is objectively biased.

¶ 89. The test is: whether a reasonable person in the juror's position could be impartial. *Id.* at 718. Not only did *Faucher* discard the *Wyss* test, it also indicated that the three-factor test was never intended to apply to an analysis of objective bias at all. *Id.* at 714.[3]

---

[2] Prior to *Delgado,* the courts recognized only "actual" and "implied" juror bias. *Delgado* created a third category, "inferred" bias, by relying on the language in *Wyss* that "bias may be inferred from surrounding facts and circumstances." *State v. Faucher,* 227 Wis. 2d 700, 714, 596 N.W.2d 770 (1999). *Faucher* explained that further confusion stemmed from the word "inferred" being used as both a verb to describe the process by which "actual" and "implied" bias is discovered, and also as an adjective. *Id.* Accordingly, *Faucher* revamped the jury bias analysis.

[3] The *Faucher* court indicated that the language immediately prior to the adoption of the three-factor test, that "[b]ias may be inferred from surrounding facts and circumstances," was actually describing the process by which "actual" or "implied" bias is discovered. 227 Wis. 2d at 714. The three-factor test was not meant to be used to determine the existence of "inferred" bias, the predecessor of objective bias.

¶ 90. The majority relies on the fifth paragraph of the *Faucher* opinion, which asserted that the court's adoption of new terms "does not . . . change our existing jurisprudence." Majority op., ¶ 39 n.18 (citing *Faucher*, 227 Wis. 2d at 706). Nevertheless, reading beyond that paragraph demonstrates that the *Faucher* court set forth not just new terminology but also new substantive standards to be applied by circuit courts and appellate courts alike.

¶ 91. It explained that "there is not an absolute, direct correlation between the former terms and the terms we adopt today," that the old terms "do not neatly correspond to the [new] terms," and that objective bias "has a meaning independent of any one of the former terms." *Faucher*, 227 Wis. 2d at 716–17. It further emphasized that the new terminology reflects "both the reason why a juror cannot be impartial, *and the analysis a circuit court should use to discern whether a prospective juror is or is not impartial.*" *Id.* at 715 (emphasis added).

¶ 92. Acknowledging that our prior case law set forth inconsistent standards of appellate review, the *Faucher* court plainly and succinctly determined that henceforth a deferential appellate standard should be applied when reviewing the objective bias of a prospective juror. The court announced:

> Our jury bias case law demonstrates that in the past we have reviewed the circuit court's determination of whether a prospective juror was objectively biased under varying standards of review. . . . Although we have inconsistently reviewed the question in the past, we are convinced that the circuit court's determination on the question of objective bias should be reviewed under a deferential standard.

*Id.* at 719.

¶ 93. Courts and commentators have recognized that *Faucher* represents a sea change in the law. The court of appeals has referred to the pre-*Faucher* era as "the previously turbid state of juror bias jurisprudence" and "the murky waters of juror bias jurisprudence in Wisconsin." *State v. Oswald,* 232 Wis. 2d 103, 110, 606 N.W.2d 238 (Ct. App. 1999); *State v. Wolf,* 2001 WI App 136, ¶ 19, 246 Wis. 2d 233, 631 N.W.2d 240.[4]

¶ 94. Shortly after *Faucher* was mandated, Professors Daniel D. Blinka and Thomas J. Hammer of Marquette University explained that *Faucher* "contains an enormously helpful discussion of past case law and the reasons why the supreme court concluded that a new approach was called for." *Wisconsin Lawyer,* September 1999; *see also* Comment, *Analyzing Juror Bias Exhibited During Voir Dire In Wisconsin: How to Lessen the Confusion,* 84 Marq. L. Rev. 517 (2000).

¶ 95. Two years later, this court emphasized that prior to *Faucher,* courts "struggled with confusing concepts and awkward terminology." *State v. Lindell,* 2001 WI 108, ¶ 110, 245 Wis. 2d 689, 629 N.W.2d 223 (citing *Delgado,* 223 Wis. 2d 270, as an example). We explained that the import of *Faucher* and its companion cases was to provide "the proper analytical framework" to resolve jury bias cases: "To assist the bench and bar in analyzing juror bias, this court initiated a major effort two years ago to clarify the law. . . . *It is our avowed hope*

---

[4] *See also State v. Smith,* 2006 WI 74, ¶ 19 n.4, 291 Wis. 2d 569, 716 N.W.2d 482 ("[A]s we emphasized in *Faucher,* 'the case law does not always use the former terms in a consistent manner, and there is not an absolute, direct correlation between the former terms and the terms we adopt today.' "); *State v. Jimmie R.R.,* 2000 WI App 5, ¶ 15 n.4, 232 Wis. 2d 138, 606 N.W.2d 196 ("[In *Faucher,* t]he supreme court cautioned that the new terms do not neatly correspond to the old ones.").

*that these new cases will provide a proper analytical framework for making and resolving challenges for cause." Id.,* ¶ 110 (emphasis added).

¶ 96. There has been widespread acknowledgement that the standards set forth in *Faucher* supplanted prior standards of jury bias jurisprudence. Recognizing *Faucher's* significance, the court of appeals has called reliance on pre-*Faucher* juror bias jurisprudence "disturbing and misplaced." It instructed attorneys to abandon their reliance on pre-*Faucher* jurisprudence for the applicable standards in juror bias cases:

> [W]e observe that the appellant's brief in this case demonstrates the continuing practice of the appellate bar to cite to and rely extensively on [pre-Faucher decisions] with respect to the question of juror bias and the nature of our review. *Such reliance is disturbing and misplaced* because Wisconsin law regarding juror bias is more accurately reflected in the subsequent decisions in [*Faucher* and its progeny]. While it is true that [pre-*Faucher* cases] were not expressly overruled by any subsequent decision, what was said in those cases was clarified and reshaped in the *Faucher* and *Oswald* cases. *We look to the Faucher and Oswald decisions for the applicable standards and ask that the appellate bar do so as well.*

*State v. Wilkinson,* No. 2002AP1206, unpublished per curiam, ¶ 2 (Wis. Ct. App., Jan. 29, 2003) (emphasis added).[5]

---

[5] I recognize that an unpublished opinion has no precedential value and does not bind this court. Wis. Stat. § 809.23(3). For the same reason I cite the article by Blinka and Hammer, I cite the discussion in *Wilkinson*—not for any precedential authority but rather to illustrate how the *Faucher* case has been perceived by the bench and bar.

¶ 97. Rather than heeding this warning, the majority resurrects old standards. As a result of applying the wrong test, the majority misses an important component of appellate review. Totally absent from its analysis is any reference to the deference reviewing courts owe to the circuit courts when making a determination that a juror was objectively biased. Instead, it professes a lack of insight garnered by the application of the obsolete three-part test and then employs the technique of setting up a straw man only to knock it down. Ultimately it determines that "failure to answer a question on voir dire is not sufficient to conclude Tanya G. was objectively biased against Funk." Majority op., ¶ 62.

¶ 98. Of course it is not sufficient. No one ever advances that it was sufficient. Employing such an analytical technique underscores an infirmity in the majority's analysis because it fails to give any deference to the circuit court's decision.

¶ 99. In *Faucher,* this court recognized the circuit court's special competence in determining whether objective bias exists and concluded that deference must be given to the circuit court's determination. 227 Wis. 2d at 720. The reviewing court will reverse the circuit court's conclusion "only if as a matter of law a reasonable judge could not have reached such a conclusion." *Id.* at 721; *State v. Smith,* 2006 WI 74, ¶ 22, 291 Wis. 2d 569, 716 N.W.2d 482.

¶ 100. The majority's analysis is further flawed when it appears to confuse the difference between objective and subjective bias. In applying the *Wyss* test, the majority focuses on the fact that Tanya G. was never provided the opportunity to explain why she failed to respond to the question about testifying in a criminal case. Majority op., ¶ 58. Without an explana-

419

tion for her silence, the majority stated, it "gives us no insight into whether . . . [Tanya G.] was emotionally involved in Funk's case." *Id.*

¶ 101. This is where the majority missteps. By focusing on whether Tanya G. was emotionally affected, it skews the focus of objective bias analysis. The focus is not on whether the individual juror was emotionally affected by the facts of the case. Rather the focus is, in considering all of the circumstances, whether a reasonable person in the juror's position could be impartial. *Faucher,* 227 Wis. 2d at 718.

¶ 102. In skewing the focus, the majority confuses objective and subjective bias. It uses subjective indicia to answer an objective inquiry. The majority asks whether Tanya G. really was biased, which is a subjective inquiry. Instead, it should be asking whether a reasonable juror in Tanya G.'s position could be impartial.

¶ 103. The majority's analysis leaves confusion in its wake. Prior to today's decision, *Faucher* was the leading case in juror bias jurisprudence. By not adhering to *Faucher* and its test for determining objective bias, the majority opinion will leave the bench and bar wondering what is the test for determining objective bias and what deference is due to the circuit court's determination. Should judges still rely on the standards set forth in *Faucher* or should they instead resurrect old tests prior to *Faucher?*

II

¶ 104. Applying the correct standard and giving the circuit court's determination proper deference, I conclude that the circuit court's determination that Tanya G. was objectively biased must stand.

¶ 105. In ordering that Funk was entitled to a new trial based in part upon its findings that Tanya G. was objectively biased, the circuit court did not conclude that every sexual assault victim was prevented from being a juror in a sexual assault case.[6] To the contrary, the judge began his analysis of objective bias by specifically recognizing that being a victim of sexual abuse does not preclude a person from sitting on a jury. He relied in part on the factual similarities between the alleged abuse in this case and the abuse that Tanya G. experienced in her past.

¶ 106. The judge reviewed the testimony elicited from the three children at Funk's trial and compared it to the abuse that Tanya G. experienced as a child.[7] He

---

[6] Funk's attorney was not seeking a per se rule that all sexual assault victims should be struck for cause. When asked at oral argument if the court should always strike victims of sexual assault on the basis that they must be subjectively and objectively biased, Funk's attorney said "absolutely not." She stated that the last child sexual assault case that she tried, she kept a victim on the jury because she thought they are not always biased.

[7] In his oral decision, the circuit court judge stated:

I believe the correct approach ... is to review the underlying testimony of three of the children because that is critical, I believe, and then when we put that abuse of the three children ... with the abuse that was inflicted upon [Tanya G.], I come to the conclusion that the objective juror could not be unbiased, and let me just ... state how I've come to that conclusion.

As I indicated previously, we have [Tanya G.] who has been sexually assaulted when she was a young girl, kindergarten through second grade.

We also have [Tanya G.] whose two sibling sisters, younger than she, were sexually assaulted during the same time period.

We also have [Tanya G.] who was in Monroe County in 2005 sexually assaulted.

noted the similarities in age; Tanya G. was ten years old when she was sexually abused and C.M.F. was ten years old at the time of the alleged abuse. Further, he noted that both the abuse that occurred in Tanya G.'s past and the alleged abuse in this case involved sisters; Tanya G.'s younger sisters were also victims of the sexual abuse perpetrated by the school bus driver and Funk's two daughters, who lived with C.M.F., were witnesses to the alleged abuse inflicted upon her.

¶ 107. In addition to the similarities between Tanya G.'s experience with sexual assault and the alleged abuse in this case, the court had other indicia of Tanya G.'s objective bias—Tanya G.'s nonresponsiveness to multiple questions asked during voir dire which should have alerted her that an affirmative response was necessary.

¶ 108. The judge made an opening statement during voir dire to the potential jurors indicating that they would be asked whether any of them or someone they knew had been a victim of sexual assault. He told them that they must be honest and would need to answer the question.

¶ 109. Subsequent questions asked by both parties elicited responses by multiple potential jurors. The State asked: "Have you, or any of your family members,

---

. . .[W]hen you look at those particular incidences, and then, when I review the trial record before the Court, and I need, not in great detail, but in some detail, just to turn everyone's attention to the trial . . . .

[C.M.F.] was called to testify. . . . She was ten years of age at the time the incident happened.

Ages are important because when we look at the previous abuse, it appears that [Tanya G.] was young when these occurred, as well as a factor that I think is important when we look at a reasonable prudent person [in Tanya G.'s] position.

or close friends ever been accused of a crime by law enforcement?" Juror E. responded that he had a friend who had been accused of a crime similar to the one before the court.

¶ 110. The State further informed the jury that the case involves allegations of sexual assault of a child. It asked the jurors whether, based on those allegations, anyone would have a difficult time being fair and impartial. In response to that question, two jurors asked to go into chambers and both were eventually dismissed. The replacement jurors were asked the same questions, and both requested to go into chambers. One of the replacement jurors was excused. The next replacement juror, upon being asked the questions, openly disclosed that his uncle went to prison for sexual assault, and he too was excused.

¶ 111. Defense counsel asked jurors whether anyone had been a victim of a crime other than a sexual assault. Three potential jurors responded that they had. Defense counsel also inquired whether anyone had testified in court. Three potential jurors responded that they had. Then, defense counsel asked if any member of the jury had ever had contact in any form with the Juneau County District Attorney's Office. Again, several jurors responded that they had.

¶ 112. Despite all of the activity ensuing from the affirmative responses of other jurors, Tanya G. never chose to individually respond to any of the questions asked on voir dire. Rather, she remained nonresponsive.

¶ 113. The majority asserts that because it does not know why Tanya G. was nonresponsive, it cannot assess whether she was emotionally involved in the facts of this case. Majority op., ¶ 58. To the contrary, the record reveals that Tanya G. explained her silence

during other jurors' responsiveness. In fact, Tanya G. offered inconsistent explanations for her silence.

¶ 114. At the postconviction evidentiary hearing, Tanya G. testified that she did not talk about the assaults by the bus driver because, "I didn't want to be fined $5,000 [under the settlement agreement], so I wasn't going to say anything." She acknowledged, however, that "I understand that I should have said something." Regarding the assault by Julian C., Tanya G. stated: "[I]t's my past. I don't go day to day saying that this guy raped me, he did this. It's not the way I live my life. I put it in the back of my head, and I don't reveal it ever again." However, minutes later she indicated that, despite being assaulted repeatedly for three years, her experiences with sexual assault never crossed her mind during voir dire or the two-day trial.

¶ 115. These inconsistent explanations at the postconviction evidentiary hearing given by Tanya G. also support the circuit court's finding that it was more probable than not that Tanya G. was objectively biased. It is the function of a circuit court—not an appellate court—to determine the weight to be given to inconsistent statements of a witness. When deciding whether a juror is biased, a circuit court judge essentially must make a credibility determination.

¶ 116. In this case, Tanya G. initially stated that she knowingly chose not to disclose the assaults. Later she contradicted herself and stated that her experiences with sexual assault never crossed her mind at voir dire or at trial. A reasonable judge would take her inconsistent statements into consideration when determining that Tanya G. was objectively biased. Yet, instead of deferring to the circuit court's function of weighing conflicting statements, the majority's analysis ignores them.

¶ 117. The circuit court articulated the difficulty and frustration in coming to this decision. It noted that a new trial would be a waste of time and would take a toll on the emotional psyches of the children testifying. It stated: "It makes me angry, but I believe there's nothing I can do as a presiding magistrate to this particular case. I must follow the law . . . . Is it more probable than not there was juror bias[?]"

¶ 118. Unlike the majority, the circuit court followed the law and had a firm grasp of controlling precedent. The circuit court correctly stated:

> When the Court addresses objective bias, the question is when we look at [Tanya G.], would a reasonable person in her position, could they be impartial, objectively?
>
> The Court must, as indicated in [*Faucher*], when assessing objective bias, consider the facts and circumstances surrounding the questions asked and the answers given on voir dire, and underlying facts of the case before the Court.

¶ 119. In reaching its decision, the circuit court considered the inconsistent statements, Tanya G.'s non-responsiveness in the midst of other jurors responding to questions implicating sexual assaults, and the similarities between the facts of her assaults and the facts of this case. Ultimately, the circuit court concluded that a reasonable person in Tanya G.'s position could not be impartial. I determine that the circuit court's conclusion is one that a reasonable judge could reach.

¶ 120. Accordingly, I respectfully dissent.

¶ 121. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent and Justice DAVID T. PROSSER joins Part II of this dissent.

¶ 122. DAVID T. PROSSER, J. (*dissenting*). This case presents a classic example of objective bias. Consequently, I join Section II of Justice Ann Walsh Bradley's dissent.